Jesus VELARDE–VILLARREAL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19834.

Unitd States Court of Appeals Ninth Circuit.

Nov. 29, 1965.

---

2. He did testify that he then filled in "29" after "October".

3. Also reported in 219 P. 831, 832 (1923).

**10**

Ely, Circuit Judge, dissented in part.

David Edward Creigh, San Diego, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Phillip W. Johnson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before POPE, DUNIWAY and ELY, Circuit Judges.

POPE, Circuit Judge.

Appellant was charged in a two count indictment with knowingly importing heroin into the United States and facilitating its transportation and concealment in violation of Title 21 U.S.C. §§ 173 and 174. After pleading not guilty and waiving jury trial, appellant was tried, found guilty, and sentenced to five years imprisonment upon each count, the sentences to run concurrently. During the trial the appellant moved for the production of one Margarito, a government informer who participated with appellant in the commission of the crime as an employee of the Government agents. Appellant moved in the alternative for a dismissal of the action and a judgment of acquittal.

Upon this appeal from the judgment of conviction appellant assigns as error the

failure of the court to order the production of Margarito. He asserts that because of the non-production of this informer-participant the court should have dismissed the action and that we should now reverse the judgment.

The evidence shows that the appellant participated in the sale of heroin to certain Government customs agents. It also shows that Margarito, the informer for the Government, was present and participated in the sale of heroin to the agents. Appellant testified that he had been solicited by Margarito to make a sale of the heroin and that this solicitation by Margarito had been carried on for a period of months. It occurred in Mexico and at first, according to appellant, he announced that he refused to participate in any sale of heroin. Appellant further testified that Margarito had been very insistent in his attempt to persuade appellant to join in the sale. Margarito, according to appellant, made repeated calls on him, during which he called the appellant a coward, told him that he would never improve his financial condition, and told appellant that if he had any regard for his family he would participate. Finally, appellant says, he changed his mind, yielded to these persuasions, and agreed to participate in the transactions here in question.

It would appear that Margarito might have been an important witness for the defendant-appellant had he been made available. Had Margarito been called, his testimony might possibly have served to corroborate appellant's claim of entrapment. See Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 2d 848.

In denying the motions made by appellant the district court stated that it did not believe the defendant's story and that entrapment had not been made out. But this is no answer to the appellant's claim that he should have had Margarito available for possible corroboration. His testimony might have convinced the judge that the defense of entrapment had been made out.

Appellant relies upon the case of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, and argues that the decision in that case supports his claim that it was the duty of the United States to have Margarito present to testify at the trial. We disagree. In Roviaro the question was whether it was the Government's duty to disclose to defendant the identity of an undercover informer who, it was charged, purchased narcotics from the defendant. The court held that in the circumstances of that case, the identity of the informer should have been disclosed. That is not the case here where the record shows that the appellant knew Margarito; that he had known him for a long time and was well acquainted with his identity.

It was suggested in a dictum in United States v D'Angiolillo, 2 Cir., 340 F.2d 453, that the defendant is entitled to receive from the Government "reasonable cooperation in securing [the appearance of such an informer]". All that appears from the record is that one of the witnesses for the Government, a customs agent, testified that he did not know the name or the whereabouts of Margarito. Another customs agent testified that Margarito had worked with him as a paid confidential informer for the period of a year or so. This witness asserted that he did not know the name or the whereabouts of Margarito. Another customs agent testified that Margarito had worked with him as a paid confidential informer for the period of a year or so. This witness asserted that he did not know the whereabouts of Margarito; that he did not know how to contact him and stated: "He contacts me when he has information only." The agent's testimony further shows that although Margarito had contacted the customs agent after the transaction affecting the appellant, the agent had not advised Margarito that he might be required as a witness and Margarito did not indicate where he was located. When asked whether he had any knowledge of Margarito's whereabouts, the agent relied "I have none whatever. If he has information for me

he will contact me. This is the only contact I have with him."

■ If it were made to appear that the Government, through reasonable effort, could have produced Margarito and yet failed to do so when defendant demanded such production, there should be a new trial. On the other hand, if the Government was actually unable by reasonable effort to produce him, we cannot hold that such inability would require a dismissal of the case, unless of course the Government itself purposely saw to it that Margarito disappeared, in the manner suggested hereafter. We know of no rule that the Government is under any general obligation to produce an informer.

■ The right of a defendant to have the testimony of such an informer, where the defense of entrapment is presented, is recognized in United States v. White, 2 Cir., 324 F.2d 814, although the court in that case noted that "Cases in this circuit and others have made it abundantly clear that the Government is not the guarantor of a special employee's appearance at trial."

In United States v. Clarke, D.C.E.D. Pa., 220 F.Supp. 905, 909, the court granted the defendant a new trial because it found the Government had not shown it had performed its "duty to expend every reasonable effort to produce [the informer] at trial." The defense there was entrapment. The court said: "We think common fairness made it the Government's duty to produce Flores at the trial, or, failing that, to show that reasonable efforts to produce him were fruitless." Even in that case, which goes as far as any we can find in support of appellant's position here, the Government's duty is merely one of "reasonable effort" to produce.

Looking in the other direction is the case of Washington v. United States, 5 Cir., 275 F.2d 687. There defendant claimed entrapment by a special employee of the Government and argued that he should have been acquitted because of the failure of the Government to call the special employee as a witness. This contention was rejected. The court said: (p. 690) "The government is not required to call all witnesses who are competent to testify. * * * The principle applies even to a special agent or informer who participated in the transaction."

The action of the court in that case may be explained, in part at least, by the fact that the court noted that the defendant there had made no showing of entrapment. He had made prior sales of narcotics. He did not hesitate in making the sale there in question. He arranged a sale over the telephone. The heroin was in his own possession. He complained he was not getting enough narcotics purchasers, and objected to his customers buying from others.

The case now before us is widely different. This defendant had never before been in any similar conflict with the law. There is no showing that he ever dealt with narcotics before, or that he ever possessed any. On his own testimony this presented a typical case of entrapment. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848.

Disturbing is certain testimony of one of the customs agents who described the departure of Margarito from the motel where the sale of the drug had taken place. That testimony was as follows: "Q. Did you see him leave? A. Yes, sir. Q. And you saw him leave by the stairway? A. Yes, sir. Q. And, I assume, going down. What did you see him do after he went down the stairway? A. He walked across the parking lot patio and disappeared out of my view walking in the direction of the Mexican border. Q. Was this on instructions from you? A. Yes. Q. And at what time was it that you saw him walking down the stairs in relation to the happenings in the room? A. Possibly three or four seconds after the knock on the door."

This testimony suggests the possibility that Margarito was sent out of the

country and into Mexico by this customs agent. If the customs agent had reason to know that Margarito would be a material witness at the trial of his case and if this agent participated in a plan to have the witness disappear so that he might be unavailable to the defense his actions might constitute an obstruction of the defense within the principles expounded in Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9. The case of Roviaro v. United States, supra, would appear to require that one in the position of this appellant should not be denied access to such an informer through any action of the United States. However, the record here is ambiguous. It is not clear whether the agent was advising Margarito to leave the country and whether that advice was given for the purpose of denying the defense access to Margarito as a witness.

■ We think we have here a special case in which the Government should be required to demonstrate its inability through reasonable efforts to produce Margarito. It appears that Margarito is frequently used by the Government, for one customs agent indicated that Margarito has occasion from time to time to contact the agent. If Margarito is available for hire, he should be available to come and testify. One wonders whether the agent might have made such an arrangement during one of those "contacts". We think whether there was a failure to expend every reasonable effort to obtain the witness is a question of fact for the trial judge.

The practice of the Government in employing agent-informers in narcotics cases is well known. We also know that such agents are usually not trained officers—often they are themselves addicts or former addicts. The Government must know that an eager informer is exposed to temptations to produce as many accuseds as possible at the risk of trapping not merely an unwary criminal but sometimes an unwary innocent as well. One could hardly expect such informants always to stay on the proper side of the line which separates those two cases.

And since the Government chooses to utilize such agents, with the attendant risk of entrapment, it is fair to require the Government which uses this inherently dangerous procedure to take appropriate precautions to insure that no innocent man should be punished.

■ We therefore hold that the cause should be and it is remanded to the trial court for the purpose of holding a further hearing at which the Government shall be given the opportunity of proving if such be the case that it was genuinely unable through reasonable efforts to produce Margarito and also, if such be the case, that the Government did not take steps to see to it that Margarito would be or become unavailable as a witness. The burden of proving these things should be on the Government. Failure to make such proof will call for a new trial. This procedure is similar to that called for in Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654.

Should the Government sustain its burden in these respects, then appellant should be denied relief. For if the Government was truly unable by reasonable efforts to produce Margarito, and was not responsible for his unavailability, the judgment of guilt must be affirmed.

It is so ordered.

ELY, Circuit Judge (concurring and dissenting):

I agree that the judgment of conviction must be reversed, but I disagree with the directed future course. While the majority opinion reveals the sensitive feel of my Brothers for the cause of justice, their reasoning leads to a point just one step short of the determination which, under the strange facts of this case, I would view as the desired ideal. I would not impose upon the trial court the obligation to conduct a hearing which, in my opinion, can serve no useful purpose. The record clearly indicates that no effort whatsoever was undertaken by the Government to locate the crucial witness. If it is already established that the Government made no effort at all, then how could it now

meet the burden of proving that it had, prior to the trial, made the "reasonable" effort which is required?

I have referred to the facts as "strange". They are so unique and so disturbing to me that I am compelled respectfully to suggest that the District Court, following remand, should consider another direction.

The appellant was not addicted to the use of narcotics. He had not, as far as the record shows, been previously involved in significant criminal activity.[1] This fact would seem to be relevant when it is contended that one has been entrapped into the commission of crime. See Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Here, the sole defense was that of entrapment. The appellant was a dishwasher and sausage maker, unemployed and ill at the time of his offense. He testified that the Government's agent, Margarito, repeatedly importuned him to participate in the illegal importation of the contraband, emphasizing the financial gain to be made and the consequent benefits to appellant's family. At long last, contended the appellant, he yielded to Margarito's importunities and participated in the crime. If these were the true facts, the crime was "manufactured" by the Government, and conviction of the victim is inconsistent with rudimentary principles of decency.[2]

It is impossible for me to see that the District Court, in the absence of Margarito, had been fairly and adequately equipped to determine the only factual issue in dispute. Only two persons were in positions to know whether or not the appellant was truly the victim of illegal intrigue. One was the appellant, and the other was Margarito, the government agent. Appellant's credibility was, of course, subject to attack because his own liberty was at stake; however, if Margarito had been available, he may have admitted that the facts presented by appellant were true. On the other hand, had he, being present, disputed the facts, the District Court would have been enabled to weigh the comparative credibilities of the disputants, taking into consideration the possible bias of Margarito because of his previous receipt of money from the Government for his activities in the Government's behalf. Margarito was not available as a witness. He accompanied appellant across the international frontier and to room 15 of the Flamingto Motel in San Ysidro, California. In the room were only three people, namely, appellant, Margarito, and the second government agent, Eyman. The latter corroborates appellant's testimony that it was Margarito, and not appellant, who had possession of the contraband. Margarito removed the drug from his pocket and handed it to appellant, who in turn passed it to Eyman. It is thus uncontradicted that appellant had possession of the drug in this country for only an instant, acting as a mere conduit for the exchange of possession. Margarito was then directed to return to Mexico. The direction was admittedly given by one Gates, another government agent, who, until the moment of arrest, had been waiting in a room adjoining that in which the transfer of the drug occurred.

It is established that the Government is not required to reveal to an accused

---

1. Defendant had never been in jail for any criminal activity prior to the present charge. His only other difficulty with United States authorities was that of twice entering this country illegally in 1948 and 1953. He was sent back to Mexico each time.

2. "[I]f a government agent by improper means or over-bearing persuasion or wrongful conduct induces a person of ordinary firmness to commit a crime which he would not otherwise commit, then under those circumstances the defendant is to be acquitted, not because he did not do something wrongful but because he was induced to do a wrongful act which he would not otherwise have done." Lopez v. United States, 373 U.S. 427, 433 n. 4, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963), quoting the trial court's instruction on entrapment to the jury. See also Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

the identity of one who furnishes "information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).[3] It is equally well established that when one whose identity is sought has been a direct participant in the crime his identity must be supplied upon request. Roviaro v. United States, supra.

The only logical reason for the rule is that the revelation of identity will enable the production as a witness of one whose testimony is deemed essential to the fair determination of the truth. Here, the identity of Margarito was known to appellant, but this knowledge was obviously useless if appellant, truly and justifiably, remained unable to compel his presence. It seems logical to me that if the prosecution is required to convey information as to the identity of its employee who is a criminal participant, then it should also be required to supply information as to the location of the participant if that information is essential to the production of the agent as a witness.

Here, the government witnesses testified that they were ignorant of the whereabouts of Margarito. They say that their previous contacts with him had come only when he communicated with them by telephone and when government money was delivered to him. Under the extreme circumstances of this case, this answer is not acceptably satisfactory to me. In Williams v. United States, 273 F.2d 781, 796 (9th Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed. 2d 868 (1960), our court repeated, from Eberhart v. United States, 262 F.2d 421, 422 (9th Cir. 1958), "[T]he failure of the Government to produce an informer or other person as a witness does not violate the defendant's rights. The Government has no duty to place on the witness stand *every* person with some

knowledge of the circumstances." (Emphasis added.) But Judge Jertberg, the author of the opinion in Williams, preceded the quoted language by emphasizing that the informer was not a participant in any of the offenses charged against the appellants in that case and by pointedly stating that "the rationale of the Roviaro case is that the government should identify the informer in order to insure that a defendant can have a full and fair chance to defend himself against the offenses charged by having knowledge of who the informer is." Our court emphasized that *"this is especially a requirement of fairness when the informant has been an active participant in the crime charged."* 273 F.2d at 796. (Emphasis added.) To me this clearly indicates a belief that when the Government chooses to involve one of its agents in the direct participation of crime, considerations of common fairness demand that the Government assume obligations which may vary with the extent of its involvement. Here, it should have been clear to the Government that appellant would probably invoke the defense of entrapment. All would know that Margarito's testimony would be essential to a full and fair determination of the issue. I read Roviaro as requiring not only identification, but also possible accessibility of the needed witness when his presence is necessary to fulfill the fundamental requirements of fairness. We ignore the spirit of Roviaro if we limit its application to its narrow holding even when the facts of an extreme case demand that more is required than the mere disclosure of the informer's identity.

Under all the unusual circumstances of the case at bar, I would hold that the Government, upon the request of the defendant, which here was timely made, was obliged either to produce its agent Mar-

3. Citing Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 83 L.Ed. 151 (1938) ("unless essential to the defense, . . . . "); In re Quarles & Butler, 158 U.S. 532, 535–536, 15 S.Ct. 959, 39 L. Ed. 1080 (1895) (informing is a right or privilege secured by the Constitution or laws of the United States); Vogel v. Grauz, 110 U.S. 311, 316, 4 S.Ct. 12, 28 L.Ed. 158 (1884) (communication by informer to state's attorney held privileged in defamation suit).

garito as a witness or to obtain and supply to the appellant such information as would enable appellant to bring him before the court.[4] In no other way, do I believe, could it have been possible for the District Court fairly to resolve the crucial question and to fit appellant's trial to the ideal traditions of American justice.

---

4. See Judge Waterman's opinion in United States v. Cimino, 321 F.2d 509, 512 (2d Cir. 1963) (concurring in part, dissenting in part). Although entrapment is not discussed, the failure of the Government to produce an informer as a witness is fully considered. Judge Waterman considers such failure, not only in the light of Roviaro, but also under the evidentiary rule that failure to produce a witness is indicative that his testimony would be unfavorable to the party having the power to produce him. Wigmore, Evidence §§ 285, 286 (1940 ed.). Judge Waterman concludes that if an informer is not produced when such informer is better able to testify to the facts in issue than are alternative government witnesses, then "unless his production is prevented by believable circumstance superior to governmental power, or prevented by proven deliberate interferences by defendant [the defendant] should be acquitted." 321 F. 2d at 517.