**Guadalupe Rocha HERNANDEZ,**
**Petitioner,**

v.

**Louis S. NELSON, Warden, California**
**State Prison, Tamal, California,**
**Respondent.**

**No. 47616.**

United States District Court
N. D. California.

May 28, 1968.

David B. Frohnmayer, San Francisco, Cal., for plaintiff.

Thomas C. Lynch, Atty. Gen., State of California, San Francisco, Cal., for defendant.

## ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS

ZIRPOLI, District Judge.

## PROCEEDINGS IN THE DISTRICT COURT PRIOR TO EVIDENTIARY HEARING

On August 8, 1967, petitioner filed a petition for a writ of habeas corpus. The court issued an order to show cause and respondent filed his return on August 25, 1967. The court, on October 20, 1967, ordered respondent to make a further return and to produce supporting documents relevant to what at the time appeared to be a serious McNally v. Hill [1] question [2], see Smith v. Wilson, 371 F.2d 681 (9th Cir. 1967). Respondent filed his further return on November 3, 1967. Petitioner submitted his traverse which the court received on November 28, 1967. On December 22, 1967, the court appointed counsel to represent the petitioner and set the matter for an evidentiary hearing.

Respondent, on March 22, 1968, made a "Motion to Rescind Order Granting Evidentiary Hearing and to Discharge Order to Show Cause". Respondent contended (1) that McNally barred relief because parole was revoked for reasons other than the 1965 conviction, and (2) that state remedies had not been exhausted. Petitioner contended (1) that McNally was no longer good law; (2) that McNally did not bar relief because

---

[1]. 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934).

[2]. Petitioner was confined not only pursuant to the challenged 1965 conviction, but also because his parole on a prior 1957 conviction had been revoked. One of the three designated bases for the revocation of parole was the 1965 conviction.

petitioner was in custody pursuant to the challenged conviction, Walker v. Wainwright, 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968); (3) that even under the pre-Walker v. Wainwright interpretation of *McNally* in this circuit a factual issue existed [3] which rendered respondent's motion untimely; and (4) that the Arketa v. Wilson, 373 F.2d 582 (9th Cir. 1967), exception to *McNally* applied, without reference to any factual issues. The court found that petitioner had exhausted his state remedies sufficiently to enable him to raise at least some of his contentions in the federal courts. Petitioner had presented a petition for a writ of habeas corpus to the California Supreme Court (Exh. A [4]), see Castro v. Klinger, 373 F.2d 847 (9th Cir. 1967). The court also concluded that concerning McNally v. Hill, petitioner's second or third argument disposed of the motion and the court denied respondent's motion.

## FACTS

On May 17, 1968 and May 23, 1968, an evidentiary hearing was conducted in this court. Petitioner was present on the former date with his court-appointed counsel and respondent was represented by counsel. Counsel returned on the latter date for further argument and to file certain documents. Also present on May 17 on behalf of respondent was Forrest Jones, a California narcotics officer who may be fairly described as the state's chief witness against petitioner in his 1965 trial which led to the conviction being questioned in the present habeas corpus proceeding. Both petitioner and Jones testified. Also lodged with the court and part of the record here is a two volume reporter's transcript of the 1965 trial [RT], a one volume reporter's transcript of proceedings had in connection with a post-conviction motion for a new trial [RTN], and a one volume clerk's transcript [CT]. In addition, counsel have stipulated to the admission into evidence of the declaration (Exh. 2) of George H. Chula, petitioner's counsel at trial. A letter (Exh. 1) to petitioner from a California Department of Corrections officer is in evidence, as is petitioner's state court habeas corpus petition (Exh. A). Finally, a tape recording of the interrogation of petitioner on October 7, 1964—the day of his arrest—has also been lodged with the court.

On October 6, 1964, petitioner was indicted by an Orange County, California, grand jury. The indictment was in three counts, each charging a violation of Cal. Health & Safety Code § 11501 (sale of heroin). At petitioner's first trial, on December 14, 1964, defendant's motion for a mistrial was granted (CT 12–13) after agent Jones testified concerning the defendant's prior record. At petitioner's second trial, on December 21, 1964, defendant's motion for a mistrial was granted (CT 15–16) after agent Jones again testified concerning the defendant's prior record. Petitioner's third trial commenced on December 22, 1964. On December 28, 1964, the court declared a mistrial when the jury was unable to reach a verdict (CT 22). The fourth trial commenced on January 13, 1965. Testimony was heard beginning on January 18, 1965. On February 15, 1965, the jury returned verdicts of guilty on two counts charging heroin sales (RT 545; CT 52). Further facts are presented below in connection with the specific arguments to which they are relevant.

## PETITIONER'S CONTENTIONS

### 1. Prosecutor's Opening Statement

■ At the fourth trial, petitioner alleges that the prosecutor referred to certain evidence in his opening statement which evidence he never sought to introduce. Petitioner contends that he was thereby prejudiced and denied a fair trial. Petitioner does not allege that a

---

3. See Order Setting Evidentiary Hearing dated and filed December 22, 1967.

4. Exhibit references, unless otherwise indicated, refer to documents introduced at the evidentiary hearing held on May 17, 1968 and May 23, 1968.

proper instruction to the jury was omitted which might have instructed the jury to consider only evidence and that statements of counsel were not evidence. Petitioner has not established any prejudice.

### 2. *Suppression of Evidence—Informer*

The evidentiary hearing established that in 1964, Forrest Jones had been working with an informer named Robert Godoy. Godoy had been responsible for twelve to eighteen narcotics arrests. As of the date of petitioner's arrest, Godoy was himself under indictment and either in custody or available to the prosecution. Petitioner, from his initial interrogation the day of his arrest to the present, denies that he was the man who made the heroin sales of which agent Jones testified. Petitioner contends that his was a case of mistaken identity. He says that another person named Hernandez, having approximately the same physical description as petitioner, had lived at petitioner's home at the time of the heroin sales. Agent Jones identified petitioner as the guilty party. Godoy's role in the transactions was that he introduced the man who made the sales to Jones. One of the sales took place at Godoy's house. Godoy was present at both sales. Petitioner, at his original interrogation, denied ever seeing Godoy with Jones.

The tape reflects that petitioner accused Jones of error or an attempted frame-up. Jones then called petitioner a "punk hood", obviously angered by petitioner's accusation.

During the fourth trial, the following colloquy occurred between petitioner's counsel and the court:

> MR. CHULA: * * * I think that the man, the other man was available up to a point and he was released by the authorities * * *.
>
> THE COURT: Mr. Chula, the court has personal knowledge * * I can recall as Judge of this Court granting a motion to dismiss some particular prosecution against Robert Godoy at the request of the Deputy

District Attorney. * * * The People moved to dismiss, and I can further remember that the Deputy said to me that Mr. Godoy had been the informant to the Grand Jury in a recent series of indictments and that he, Godoy, intended to leave the jurisdiction because he feared for his life. At any rate, it was something like that or words to that effect. (RT 40–41)

Agent Jones' testimony on May 17, 1968, establishes that Godoy was available to the state on October 7, 1964. Jones testified that petitioner was confronted with Godoy at the interrogation. The tape reflects the confrontation of petitioner with an unnamed informer—presumably Godoy—whom petitioner denied ever having seen with Jones before. Mr. Chula's declaration (Exh. 2) reflects that he made numerous efforts to locate Godoy. The declaration is consistent with the colloquy above; namely, Mr. Chula states that the District Attorney told him (Chula) that Godoy's intentions to leave the area were known to the prosecution. Petitioner at all times sought the testimony of the informer because petitioner contended that the informer could exculpate him.

This court concludes that Robert Godoy was a material witness on the issue of petitioner's guilt, that his materiality was known to the district attorney's office prior to the petitioner's first trial and at the time it dismissed its case against Godoy on October 9, 1964, that the prosecutor knew that Godoy would flee the area upon his case being dismissed, and that the prosecutor allowed Godoy to leave the area when by other conduct Godoy's availability could have been insured.

Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), holds that the identity of an informer who is a material witness on the issue of guilt must be *disclosed* to a defendant. See also Lopez-Hernandez v. United States, 394 F.2d 820 (9th Cir. 1968). Alcorta v. Texas, 355 U.S. 28,

78 S.Ct. 103, 2 L.Ed.2d 9 (1957) ; Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) ; and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), collectively stand for the proposition that the prosecutor may not knowingly engage in conduct which causes evidence which might be favorable to the defendant to be unavailable to him. Circumstances strikingly similar to those of the case at bar were discussed in Velarde-Villarreal v. United States, 354 F.2d 9 (9th Cir. 1965). The court said:

> We know of no rule that the Government is under any general obligation to produce an informer. 354 F.2d at 12.

And

> If it were made to appear that the Government, through reasonable effort, could have produced * * * [the informer] and yet failed to do so when defendant demanded such production, there should be a new trial. On the other hand, if the Government was actually unable by reasonable effort to produce him, we cannot hold that such inability would require a dismissal of the case, *unless of course the Government itself purposely saw to it that * * * [the informer] disappeared,* in the manner suggested hereafter. 354 F.2d at 12 [emphasis added]

> If the customs agent had reason to know that * * * [the informer] would be a material witness at the trial of his case and if this agent participated in a plan to have the witness disappear so that he might be unavailable to the defense his actions might constitute an obstruction of the defense within the principles expounded in Alcorta v. State of Texas * *. The case of Roviaro v. United States would appear to require that one in the position of this appellant *should not be denied access to such an informer through any action of the United States.* 354 F.2d at 13 [emphasis added]

■ The *Velarde-Villarreal* case was remanded for an evidentiary inquiry into the government's action. In the case at bar that inquiry has been had and the findings made which indicate that the prosecutor's conduct denied petitioner a fair trial. It cannot be said that petitioner would have prevailed had the informer been present. But in view of petitioner's denial of culpability, he was entitled to have the government refrain from conduct causing the unavailability of the witness.

*3. Admission of Identification*

Petitioner contends that agent Jones' identification of petitioner as the guilty party was so unreliable as a matter of law that the court should not have admitted it at all for the jury's consideration. Petitioner relies upon Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ Although petitioner's argument may provide additional support for the proposition that the informer was a material witness, this court is of the view that the *Stovall* argument per se has not been presented to the state courts, 28 U.S.C. § 2254(b).

*4. Admission of Taped Statements*

Parts of the tape-recorded interrogation lodged with this court were played to the jury at petitioner's state-court trial. This court has had the unique opportunity to listen to the challenged interrogation. Petitioner contends that the warnings were inadequate and the statement was involuntary. Petitioner contends he was upset and in a state of anxiety because of the circumstances of his arrest. Police arrested petitioner by breaking into his bedroom and forcing him to stand naked as they searched for narcotics. Petitioner's then pregnant wife was also forced to stand naked while she was "shaken down". Petitioner's young daughter was also allegedly searched by the police which search included an examination of the inside of the diaper to see if narcotics were there being concealed.

■ While the foregoing facts, if true, might well cause one to be upset emotionally, the court in this case has had the opportunity to listen to the original interrogation which was recorded. The court concludes (1) that petitioner was fairly informed of his rights as then required by Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and (2) that petitioner made his statements freely and voluntarily. Petitioner was coherent, rational, and calm. He refused to allow the interrogator to put words in his mouth and was articulate. The court is satisfied that the statements were not involuntary.

### 5. Double Jeopardy

■ Although the respondent contends an exhaustion of remedies problem exists as to this claim, the court concludes that petitioner has adequately presented the underlying facts to the state courts. The thrust of the argument is that jeopardy attached following the first two mistrials or at least the third mistrial. Petitioner has cited, and this court has found, no authority to support the argument and the court concludes that the argument is without merit.

### 6. Counsel at Sentencing

■ Petitioner had a constitutional right to counsel at sentencing, Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed. 2d 336 (1967); Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Indeed, had there been counsel, he might have been able to perfect the motion for a new trial which petitioner was compelled to make by himself. Respondent contends that defendant, by seeking continuances of the day for judgment and sentence (CI 59, 61, 63, 64, 66), waived his right to counsel. While a waiver of the right to counsel may occur by seeking repeated continuances for the purpose of hindering the administration of justice, a waiver of a constitutional right is not to be lightly presumed. Absent findings by the trial court concerning the reasonableness of the continuances or absent an express waiver by the defendant, this court should not find a waiver. No such facts appear from the record of the proceedings had in connection with the motion for a new trial and sentencing (RTN 2–17). Petitioner was denied counsel.

### 7. Search and Seizure

■ The evidence before this court does not support petitioner's argument that his fourth amendment rights have been violated by the search conducted incident to his arrest.

### CONCLUSION

Because of this court's finding that petitioner was denied a fair trial by the prosecutor's conduct relative to the informer and was denied counsel at his motion for a new trial and sentencing,

IT IS ORDERED that the petition for a writ of habeas corpus is granted.

■ Because petitioner is also confined pursuant to a parole revocation —the underlying conviction which led to parole not being challenged—there remains the question of relief. The writ may issue even though release need not follow, Walker v. Wainwright, 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968). The court has broad discretion to shape the remedy afforded by the writ in the interests of justice, Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (May 20, 1968); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (May 20, 1968).

Therefore,

IT IS FURTHER ORDERED that the State of California may not rely upon the 1965 conviction from this date forward for the purposes of incarcerating petitioner or denying him his civil rights.

In the order of December 22, 1967, this court observed that the facts surrounding his parole revocation were

susceptible of the interpretation that following the 1962 and 1963 violations of parole conditions, the parole authorities either did not act or took all the action they intended to take as a result of those events. Only following the 1965 conviction was parole revoked.

It is possible that but for the 1965 conviction, parole would not have been revoked.

Therefore,

IT IS FURTHER ORDERED that the State of California shall inform this court within sixty (60) days whether it intends to retry petitioner. If the state does not retry petitioner or if a retrial results in an acquittal, the State of California shall show cause why this court should not order petitioner's release.

The effective date of this order granting a writ of habeas corpus shall be stayed until the time for filing of a notice of appeal expires. If the State appeals herefrom, it may apply for a further stay.