Gabrielli, J.
The primary issue on this appeal is the obligation of the People to produce at trial a confidential informant once in the control of the police, who has become unavailable through no intention of the prosecutor, but *309 through the otherwise excusable or justifiable act of the prosecutor. Because the charges against them arose from the same transaction involving the sale of narcotics, the defendants were tried together. The identity of the confidential informant, Pat Adams, was revealed on cross-examination of prosecution witnesses and at the close of the People’s case, the defendants sought the production of the informant. It was revealed that she had moved to Florida, having departed New York by means of a plane ticket provided by the Drug Enforcement Administration. The trial court denied defendants’ motion for production of the informant stating that, while disclosure was required in this case, it would not be appropriate to require production. The defendants were convicted of the criminal sale of narcotics, and the convictions have been affirmed by the Appellate Division.
In People v Goggins (34 NY2d 163, 169-170, cert den 419 US 1012), we articulated standards governing the disclosure of the identity of a confidential informant, indicating that the defendant "must show a basis in fact to establish that his demand does not have an improper motive and is not merely an angling in desperation for possible weaknesses in the prosecution’s investigation” and that "the truly crucial factor in every case is the relevance of the informer’s testimony to the guilt or innocence of the accused” (see, also, People v Pena, 37 NY2d 642, 644-645). We also stated that production of the witness "if appropriate” may be directed by the court. Goggins did not treat with the problems arising from the unavailability of the informant to both the prosecution and the defense at the time of trial.
We emphasize that the right to production does not flow from the right to disclosure (see United States v Gentile, 495 F2d 626; United States v Super, 492 F2d 319, cert den sub nom. Burns v United States, 419 US 876; Wilson v United States, 409 F2d 184, cert den 395 US 983; United States v Cimino, 321 F2d 509). However, once the Goggins test is satisfied, where an unavailable informant is or has been under the employ or control of law enforcement authorities, the People have a duty to produce the informant or exert diligent efforts to effect the production of the informant for the defense. This follows almost apodictically from the Goggins mandate, the essential purpose of which is to make an informant possessing material and relevant information available to the defense for examination at trial. The difficulty arises, *310 however, when reasonable efforts to locate the informant prove unsuccessful. In this case we do not have a situation where the People intentionally removed the informant from the jurisdiction in order to prevent her from testifying at trial (e.g., Hernandez v Nelson, 298 F Supp 682, affd 411 F2d 619). The record does not suggest any such "sinister motive” or bad faith on the part of the prosecution in assisting the informant to move to Florida (see, e.g., United States v Super, 492 F2d 319, 321, n 2, supra; United States v Noah, 475 F2d 688, 691, n 2). While law enforcement authorities provided funds which enabled the informant to leave Rochester, she decided on her own initiative to move to Florida because of her stated fear for her own personal safety.[1] Moreover, there is no indication that the People were in any way responsible for the informant’s ultimate disappearance following her arrival in Sanford, Florida.[2]
The Trial Judge found that the prosecution undertook diligent efforts to locate the missing informant through the services of New York, Florida and Federal law enforcement agencies. Thus, the question presented in this case is whether, under these circumstances, in light of the efforts to locate the informant on the part of the People and in the absence of bad faith, the People may be required to produce an unavailable informant who had previously been under their control or, in the alternative, forfeit their case against the defendants.
The ultimate concern, as Goggins aptly articulated, is the defendant’s "right of confrontation, due process, and fairness” (supra, p 168). At the same time, the People should not be penalized when the informant has, on his or her own initiative, effectively disappeared after relinquishment of government control. Thus, in order to compel production, or dismissal of the charges under the circumstances presented in this case, we conclude that the defendant must meet a higher burden and demonstrate that the proposed testimony of the informant would tend to be exculpatory or would create a *311 reasonable doubt as to the reliability of the prosecution’s case either through direct examination or impeachment. While this approach has been utilized in situations involving nontestimonial exculpatory evidence withheld by the prosecution (see, e.g., United States v Agurs, 427 US 97, 110-111; Brady v Maryland, 373 US 83), we think it should apply here where a defendant seeks the production of a witness alleged to have been under the control of the People.
In sum, we are not here concerned with a case dealing with a bad faith removal of a critical or material witness. Nor, of course, does this case involve inadequate efforts to ascertain the whereabouts of a missing material witness who was once under the control of the People and whose disappearance was in any fashion due to such prosecutorial bad faith. Likewise, we are not here involved with an obligation to produce any claimed or demonstrated exculpatory nonwitness evidence as in Brady v Maryland (supra) or United States v Agurs (supra). Requirements to disclose the identity of an informant, to produce exculpatory nontestimonial evidence or to produce a witness under prosecutorial control touch tangentially upon the question presented in this case. However, we are not here directly concerned with the rules governing these situations for, although they too are concerned with the relevance and materiality of the evidence sought with respect to the question of guilt, each of these situations is subject to somewhat differing standards.
We intend by our holding to make it clear that if it is demonstrated that the prosecutor once had the informant under his control and was responsible for his disappearance, there should be a duty to produce and if this be impossible of accomplishment, then he may be faced with dismissal of the charge, or a new trial may be appropriate. However, if the prosecutor exerts reasonable good faith efforts to make the witness available, then neither dismissal of the charges may be ordered nor a new trial directed unless the defendant demonstrates affirmatively that the testimony of the informant was not only relevant but also that it is likely to have been favorable to some degree in tending to exculpate the defendant or, alternatively, he must show the existence of a significant likelihood that the witness’ testimony could be impeached to a meaningful degree creating a doubt as to the reliability of the prosecutor’s case.
Here the defendants demonstrated that the informant *312 might give relevant testimony on a material issue, but they failed to satisfy the higher burden of establishing a likelihood that her testimony would tend, to a significant degree, to exculpate them to the extent that there should be a dismissal or a new trial.
Thus, each of the defendants initially had the burden of demonstrating the materiality and relevance of the informant’s testimony to his case under Goggins. The Trial Judge held that this burden was satisfied in this case and we do not disturb that conclusion based on the exercise of sound discretion. Once that burden is satisfied, the defendants were entitled to disclosure of the informant’s identity and, at least, diligent efforts toward the production of an unavailable informant once under the control of the People. An absolute duty of production, or, alternatively, dismissal of the prosecution’s case, is required only where the People have intentionally procured the disappearance of the informant when they knew or should have known that the testimony would be material and relevant to the defense, or have exerted inadequate efforts to locate the informant, to avoid his or her presence at trial.
In the case where diligent efforts have been exercised, however, a defendant must satisfy a higher standard of materiality and relevance. In the instant cases, where it was found that such efforts were undertaken, we conclude that the defendants have not shouldered this burden. It is claimed that Jenkins was merely used by defendant Daniel to hand over a package of heroin to a purchaser and that he had no knowledge of its contents. Jenkins chose not to testify but relied on Daniel’s testimony concerning the transaction to establish this defense. However, there was only minimal contact between Jenkins and the informer and it is not alleged in what manner the testimony of Miss Adams could have assisted him in demonstrating his lack of knowledge of the nature of the transaction in which he was concededly engaged.
Daniel based his defense on the contention that he was acting as an agent of the informant Pat Adams (cf. People v Lindsey, 16 AD2d 805, affd 12 NY2d 958) and handled the drugs only as a favor to her. Doubt was cast upon this defense by the testimony of one of Daniel’s customers who stated that he had had prior drug dealings with Daniel.
The People established their case, and defendants have not demonstrated that the testimony of the informant would tend *313 to be exculpatory or in any way weaken the prosecution’s case against them.
The discussion by the dissenter would be persuasive if, but only if, there was the slightest suggestion in the record that Pat Adams’ testimony would to the slightest degree establish any of the facts influencing the issue of guilt or innocence of the defendants. The fact is, however, that there is nothing except defendants’ exploitation of her unavailability in order to speculate that maybe somehow, in some way, or in some fertile imagination, her testimony might provide something.
We have examined the other claims advanced by the defendants and we find them to be without merit. Hence, the convictions should not be disturbed.
Accordingly, the orders of the Appellate Division should be affirmed.

People v Law

Memorandum. We reverse the order of the Appellate Division and direct that a new trial be had.
Defendant’s plaint that the Trial Judge erred in refusing to compel production of the unavailable informant or, in the alternative, to dismiss the indictment, is rejected for the reasons stated in People v Daniel and Jenkins (decided herewith). This case involves the same informant as in the Daniel and Jenkins cases, and raises the same issue treated by our determination in those cases. The Trial Judge found, and correctly we think, that the prosecution exercised diligent efforts in attempting to locate the informant for the defense.
We conclude that the defendant has not met the burden of showing the materiality and relevance of the informant’s testimony to a significant degree sufficient to establish the likelihood that her testimony would tend to exculpate him. The defendant was charged with making two separate sales to Inspector Herritage, an undercover officer, who testified to the transactions involving the sale of narcotics. His defense, in part, was that he did not know Herritage and had never seen him. The prosecution, however, established, through the testimony of three witnesses, that meetings had taken place between the defendant and Herritage. Indeed, the Appellate Division (p 233), concluded that Law’s guilt had been "overwhelmingly established by eyewitness testimony”.
Defendant’s request, however, that the jury be instructed *314 that possession of heroin is a lesser included offense of its sale should have been granted since, on the facts of this case, the jury was "free to accept or reject part or all of the defense or prosecution’s evidence” (People v Henderson, 41 NY2d 233, 236; People v Malave, 21 NY2d 26).

. Pat Adams had reported to the police that threats against her had been made and her apartment had been broken into; and even after the People moved her to a hotel where she could be better protected, she continued to be fearful of her safety.

. I would note that the presence of the informant in another State does not, strictly speaking, render the informant unavailable to the defendant. CPL 640.10 (subd 3) sets forth the procedure for securing the attendance of a witness from without the State in criminal cases, and that section itself requires the defendant to show that the witness sought is material and relevant to the defense (see People v McCartney, 38 NY2d 618).