2 F.3d 1159
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
v.
Sergio ORTIZ-MARTINEZ, Defendant-Appellant.
 No. 92-10394.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 16, 1993.
Decided Aug. 2, 1993.
 
 Before LAY,* Senior Circuit Judge, HUG and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Sergio Ortiz-Martinez was convicted of possession with intent to distribute cocaine, conspiracy to possess with intent to distribute cocaine, and use of a firearm in relation to a drug trafficking crime. At the close of the evidence, Ortiz-Martinez moved for a judgment of acquittal, arguing that the evidence showed that he was entrapped as a matter of law. The court denied the motion but instructed the jury on the law of entrapment. Ortiz-Martinez now appeals. We affirm the judgment of conviction.
 
 I. Entrapment
 
 3
 The defense of entrapment has two elements: government inducement of the crime and the absence of predisposition on the part of the defendant. Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992); United States v. Skarie, 971 F.2d 317, 320 (9th Cir.1992).[1] Ortiz-Martinez argues that the government failed to show that he was predisposed to participate in the drug dealing absent government inducement.[2] He points out that he had no prior criminal record. At trial Ortiz-Martinez testified that a government informant contacted him several times over a period of approximately two months before the drug transaction took place. This testimony was unrebutted because the informant did not testify at trial.
 
 
 4
 Nonetheless, there is evidence that weighs in favor of finding predisposition. It is undisputed that Ortiz-Martinez was to be paid $4,500 for his participation in the transaction, such that he expected to make a profit. In addition, testimony from DEA agent Jim Brown, who on several occasions met and spoke with Ortiz-Martinez about consummating the drug deal, strongly contradicted Ortiz-Martinez's claimed reluctance. For example, Agent Brown testified that Ortiz-Martinez showed no hesitation in negotiating the purchase price of the cocaine with him and insisted on seeing the $60,000 in purchase money. During these negotiations, Ortiz-Martinez admitted that he telephoned Brown, at one point asking Brown if he still wanted to do the deal. On June 28, 1992, the date the transaction was to occur, Ortiz-Martinez met with Brown several times to discuss the location for the drug deal. When Brown and Ortiz-Martinez could not agree on a location, it was Brown and not Ortiz-Martinez who called the deal off, and it was Ortiz-Martinez who telephoned Brown minutes later to indicate that the deal could take place at the location Brown had requested.
 
 
 5
 Viewed in the light most favorable to the government, we find sufficient evidence for a rational trier of fact to conclude that Ortiz-Martinez was predisposed to commit the crime. As the Supreme Court noted in Jacobson, the entrapment defense is of little use when the government merely provides the defendant with the opportunity to buy or sell drugs. 112 S.Ct. at 1541. The district court did not err in denying Ortiz-Martinez's motion for judgment of acquittal.
 
 II. Failure to produce informant
 
 6
 Ortiz-Martinez also claims the district court abused its discretion in denying his motions for a mistrial and for a new trial based on the government's failure to produce the confidential informant at trial. The facts are as follows: Although the government had served a subpoena on the informant, he failed to appear the first day of trial. The government was unable to locate the informant until late the following afternoon. At that point, however, despite the fact that the informant appeared to be intoxicated, the DEA agent merely handed the informant a copy of the subpoena and told him to appear. The informant did not appear at the trial.
 
 
 7
 At the close of the government's case, Ortiz-Martinez moved for a mistrial based on the government's failure to produce the informant. The district court summarily denied this motion. After the jury returned a guilty verdict, Ortiz-Martinez moved for a new trial. The district court denied the motion, finding that although the government had not made reasonable efforts to produce the informant, Ortiz-Martinez had not been prejudiced by the informant's failure to testify.
 
 
 8
 Ortiz-Martinez argues that the district court erred in concluding that he had to show that the informant's failure to testify prejudiced him. We disagree. In Velarde-Villarreal v. United States, 354 F.2d 9, 13 (9th Cir.1965), the court remanded to the district court for a hearing on whether the government had made reasonable efforts to locate the informant, but there was evidence that the informant's absence may have prejudiced the defendant. Id. at 11.[3]
 
 
 9
 Here, we agree with the district court that the informant's failure to testify did not prejudice Ortiz-Martinez. First, Ortiz-Martinez was able to introduce the fact that the informant had failed to appear, the length of time in which the informant had worked for the government in that role, and his earnings in this case and generally in his work as an informant. In addition, Ortiz-Martinez's testimony about his early telephone conversations with the informant were unrebutted and thus corroborated his entrapment argument. As we noted above, however, testimony from Agent Brown and indeed from Ortiz-Martinez himself contradicted Ortiz-Martinez's claims of entrapment. Accordingly, we believe the district court did not abuse its discretion in denying Ortiz-Martinez's motion for mistrial and for a new trial.
 
 
 10
 Ortiz-Martinez raises two additional arguments on this point. He first contends that upon his motion for a mistrial, the district court was required to hold an evidentiary hearing to determine whether the government had made reasonable efforts to produce the informant. We think this point is moot because the trial judge, on defendant's motion for a new trial, did hold a hearing and made the finding that Ortiz-Martinez seeks--that the government failed to make reasonable efforts to locate the informant.
 
 
 11
 Second, Ortiz-Martinez suggests that the prosecutor knew about the DEA agent's contact with the informant on the second day of trial, yet failed to notify the court and defense counsel, even when defendant moved for a mistrial. Defendant urges that the prosecutor acted in bad faith, denying him due process. Even if we were to assume that the prosecutor had acted as Ortiz-Martinez suggests,[4] we find defendant's argument to be without merit. Courts have found due process violations in cases where the governmental agent has affirmatively mislead the defendant about attempting to locate the informant or has made the informant impossible to locate. See, e.g., Renzi v. Virginia, 794 F.2d 155, 159 (4th Cir.1986). The facts of this case simply do not rise to that level.
 
 III. Prosecutorial misconduct
 
 12
 Ortiz-Martinez claims two errors in the government's closing argument. He contends that the government made several factual misstatements in its closing argument which require a new trial.[5] Because he did not object to these statements, however, Ortiz-Martinez has waived his objections. See United States v. Sehnal, 930 F.2d 1420, 1425 (9th Cir.), cert. denied, 112 S.Ct. 300 (1991). We therefore review the statements for plain error, reversing only if there is "a high probability that the error materially affected the verdict." Id. at 1426. Here, the court properly instructed the jury that the arguments and statements of the attorneys are not evidence. Having reviewed the record, we do not believe that these statements materially affected the jurors' evaluation of the counts against Ortiz-Martinez or his defense of entrapment.
 
 
 13
 Ortiz-Martinez also contends that the prosecutor improperly suggested that the informant failed to testify because Ortiz-Martinez had threatened him.[6] Here, because defendant objected to the statement, we review for harmless error. United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986). Although we agree that the prosecutor should not have made such a suggestion, we do not think that the statement, considered in the context of the entire trial, affected the jury's ability to judge the evidence fairly. See United States v. Young, 470 U.S. 1, 11-13 (1985); Endicott, 803 F.2d at 513.
 
 
 14
 We find no grounds for reversal in any of appellant's contentions. The judgment of conviction is therefore AFFIRMED.
 
 
 
 *
 Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Defendant must first point to "evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act" by government agents. Skarie, 971 F.2d at 320. The government then must show beyond a reasonable doubt that the defendant was disposed to commit the criminal act before first being contacted by government agents. Jacobson, 112 S.Ct. at 1540
 
 
 [2]
 The Skarie court noted five factors that are relevant to determining predisposition:
 (1) the character of the defendant; (2) who first suggested the criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant demonstrated reluctance; and (5) the nature of the government's inducement.
 971 F.2d at 320. Of these, the most important is whether defendant demonstrated reluctance to engage in the crime which was overcome by government inducement. Id. In reviewing these factors, we view the evidence in the light most favorable to the government. Id.
 
 
 [3]
 Other circuits are in accord. See, e.g., United States v. Ariza-Ibarra, 651 F.2d 2, 11-12 (1st Cir.), cert. denied, 454 U.S. 895 (1981); United States v. Lane, 574 F.2d 1019, 1022 (10th Cir.), cert. denied, 439 U.S. 867 (1978)
 
 
 [4]
 The record is unclear on exactly when the prosecutor learned of the DEA agent's contact with the informant. At the earliest, however, it appears to have been after both sides had rested (March 24, 1992), not on the date that the agent actually spoke with the informant (March 20, 1992)
 
 
 [5]
 Defendant points to the following misstatements: (1) on two occasions, the prosecutor stated that Ortiz-Martinez had agreed to engage in the drug deal on the first request; (2) the prosecutor said that Ortiz-Martinez had indicated he would try to find drugs for the informant when he visited Mexico; and (3) in rebuttal closing argument, the prosecutor noted that the fact that Ortiz-Martinez had no prior criminal record "doesn't mean he's never done it before."
 
 
 [6]
 In his closing argument, Ortiz-Martinez suggested that the reason the informant failed to appear was because "he knew when he took that stand he was going to have to answer to defense lawyers. He knew he was going to have to justify what he did. And he knew what he did to this man."
 In its rebuttal closing argument, the prosecutor then stated that "another reasonable inference that the CI didn't show up, or the informant didn't show up, is that he was present at a cocaine transaction where these individuals were arrested and they were carrying guns."