Charles Edward **HARDIN**

v.

**W. J. ESTELLE, Director Texas Department of Corrections.**

**No. MO–71–CA–101.**

United States District Court,
W. D. Texas,
Midland-Odessa Division.

March 29, 1973.

Wm. Monroe Kerr, Midland, Tex., for petitioner.

John Hill, Atty. Gen., of Tex., Lonny Zwiener, Asst. Atty. Gen., of Tex., Austin, Tex., James A. Mashburn, Dist. Atty., 142nd Judicial Dist., Jerry Buckner, Asst. Dist. Atty., 142nd Judicial District, Midland, Tex., for respondent.

SUTTLE, District Judge.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

This habeas corpus case has been brought by the petitioner, Charles Edward Hardin, to obtain federal review of his state criminal trial. On September 22 and 23, 1969, he was tried and found guilty by a jury in Midland Texas of robbery by assault. He had previously been convicted of the same type of crime and because of this prior conviction he was assessed a sentence of life.[1]

Thereafter, the petitioner appealed to the Texas Court of Criminal Appeals raising two grounds of error. First, he contended that he had been denied compulsory process of witnesses because the trial judge had refused to issue bench warrants to secure the attendance of five "material alibi witnesses." *See* Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). And second, he contended that he had been denied a fair trial by an impartial jury because throughout the trial he had been shackled. *See* Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). The appellate court fully considered both issues and affirmed. Hardin v. State, 471 S.W.2d 60 (Tex.Cr. App.1970). State remedies, thus, were exhausted. The petitioner then brought this case raising the same grounds of error and a factual hearing was held. On the basis of the facts established at that hearing, this Court finds that the petitioner has been denied a trial which will

---

1. The petitioner is presently confined in the Ellis Unit of the Texas Department of Corrections serving this sentence as well as a 60 year sentence for robbery by firearms, see Hardin v. State, 453 S.W.2d 156 (Tex. Cr.App.1970), a 5 year sentence for attempted escape, and another sentence of life, see Hardin v. State, 453 S.W.2d 158 (Tex. Cr.App.1970).

pass constitutional muster and, accordingly, finds that the petition for habeas corpus must be granted.

The petitioner's first ground of error is based on facts which occurred prior to the date of his trial. Although he has had a long history of criminal activity, he has consistently maintained that he is innocent of the crime with which he was charged and was not in Midland on the date it occurred. Rather, he contends that on the date of the robbery he was en route from Midland to Indianapolis, Indiana by air.[2]

■ An investigator appointed to assist the defense sought to establish this alibi at an early stage of the case. But after a superficial examination of airline schedules, he found that passenger lists were not available and thus, he was unable to determine whether the petitioner had been on a flight from Midland when the robbery took place. Those passenger lists were never secured. Nevertheless, the petitioner continued to insist that he had not been in Midland. And he furnished his two appointed counsel with the names of several persons who were then incarcerated throughout the state but who were personally aware of his flight.[3] They were never questioned.[4] As the trial approached, however, in August of 1969, one of the petitioner's counsel informally asked the trial judge to bring these witnesses to Midland to testify for the defense. The judge was made aware of the fact that the petitioner believed that they would establish his alibi; yet he summarily denied the request.

From the circumstances surrounding this denial, it is clear that the trial judge did not base his decision on a procedural defect of the petitioner's request. Instead, it is clear that his decision was based on the merits of the request and that he would not have the witnesses brought to trial. Therefore, the petitioner's counsel abandoned any hope of obtaining the witnesses until the week prior to trial.[5] On Friday of that week, in order to establish a record of their request, counsel formally moved to secure the attendance of five witnesses noting that "[a]ll of said witnesses are to be used in this cause as alibi witnesses and for said purpose they are material to the preparation of the defense".

2. In this regard, the petitioner has candidly remarked: "Like I say, I am not saying that I am not guilty of a few things, but there's a few things that I am not guilty of . . ." (H.C.Tr. 171).

3. In connection with the present case, the deposition of three of these persons were taken. Briefly, one stated that he had taken the petitioner to the airport in Midland on the morning of the day the robbery occurred while the others stated that they had met him at the airport in Indianapolis late that afternoon about the time of the robbery.

4. Thus, the facts of this case closely parallel the facts of Gomez v. Beto, 462 F.2d 596 (5th Cir. 1972). But because the petitioner has failed to exhaust state remedies on the issue raised in that case it may not be raised and disposed of here. Pickard v. Conner, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The attempt by counsel to interject the issue into this case, however, should prevent any thought of waiver if the petitioner's confinement is questioned again. Cf. Murch v. Mottram, 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972); Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68

L.Ed. 999 (1924). See generally, Sanders v. United States, 373 U.S. 1, 15–19, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

5. In many cases, the untimeliness of a motion filed immediately prior to trial might prove a bar to relief. However, the following testimony of one of the petitioner's counsel indicates the irrelevance of timeliness in the context of this case.

A. [Mr. Prosecutor], I filed a written motion seeking that these people be returned to Midland County, Texas. This motion was overruled. I was told some two weeks before I filed it. that this motion would be overruled. And that's basically all I know about the situation.

Q. Two weeks prior to your filing it?

A. Yes, it was discussed.

Q. And, you determined it would be overruled, is that correct?

A. That is what I was told, correct. And I filed the written motion purely for the record.

Q. Who told you it would be overruled?

A. It was so indicated by the proper authorities that it would be overruled.

(St. Tr. 244)

The trial judge, without any response from the state, again denied the motion and ordered that:

> On this the 18th day of September, 1969, the defendant duly presented to the Court the Motion to Bench Warrant out the following *material alibi witnesses* on behalf of Charles Edward Hardin and the Court after due consideration of said application, and after having found that it was duly and properly filed, denied to the Defendant, Charles Edward Hardin, compulsory process to bring to Midland County Theo Rae Thames, Russell Chamberlain, Raymond Lee Brown, Nancy Haggard and Pat Wayne Gilliland, all being *material alibi witnesses* on behalf of the defendant Charles Edward Hardin. (Emphasis supplied).

As a result, except for one of his counsel, no witnesses were called in the petitioner's defense.

The Texas Court of Criminal Appeals did not reach the substance of this order in its review of the petitioner's trial. Rather, notwithstanding the trial court's finding that these were material alibi witnesses, the appellate court found that the petitioner had failed to attach an affidavit to his formal motion "saying what [each] witness would testify to . . . ." Hardin v. State, *supra*, 471 S.W.2d at 62. Thus, the court concluded that the petitioner had failed to request the attendance of the witnesses in a proper manner and was therefore not entitled to relief.

■ The record discloses that the petitioner did fail to attach to his motion the affidavit required. Initially then, the inquiry of this Court must turn from the substantive validity of the trial court's action to the validity of the rule of procedure which barred its review. Henry v. Mississippi, 379 U.S. 443, 85

S.Ct. 564, 13 L.Ed.2d 408 (1964). If that rule was clearly announced and if it reasonably served a legitimate interest of the state in the context of this case, the denial of the right of compulsory process is an issue which rests upon non-constitutional state grounds and lies beyond the pale of federal habeas corpus review.

■■ The right to compulsory process, even though "Few rights are more fundamental than that of an accused to present witnesses in his own defense", Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), is not absolute. Not every witness requested by a defendant must be produced simply because a defendant requests his attendance. "The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use". Washington v. Texas, supra, at 23 of 388 U.S., at 1925 of 87 S. Ct. Accordingly, to determine which witnesses a defendant has a right to use and which witnesses must be produced, states may require that a defendant establish a colorable need for each of the witnesses he requests. Hoskins v. Wainwright, 440 F.2d 69, 71 (5th Cir. 1971).

■ The exact manner in which this colorable need must be shown is the question here. Although the Texas Court of Criminal Appeals held that the motion of the petitioner failed because it was not accompanied by an affidavit "saying what [each] witness would testify to . . . ." no case can be found which set out such a requirement prior to the petitioner's trial.[6] Thus, the petitioner cannot be deemed to have been apprised of the existence of this requirement. Nor can he be harmed because he failed to comply with its demands. *See* Wright v. Georgia, 373 U.S. 284, 83 S.

---

6. Following the petitioner's trial, the Texas Court of Criminal Appeals did announce that motions to compel the production of witnesses must be accompanied by "(a)n affidavit of the witness . . . (or) . . . a showing made under oath as to what he would have testified if called . . . ." Brito v. State, 459 S.W.2d 834, 837 (Tex.Cr.App. 1970). This requirement, however, had not been forecast before.

Ct. 1240, 10 L.Ed.2d 349 (1963). States may not bar the assertion of constitutional rights by ex post facto procedural rules. And the fact that there were no affidavits in this case, therefore, cannot preclude this Court's review.

■ That finding alone, however, does not resolve the problem presented by the petitioner's motion. Prior to his trial, the Texas Court of Criminal Appeals had required that motions to compel the production of witnesses apprise the trial court of the testimony which was expected and offer some assurance that the witnesses requested would waive any privileges they may have and testify for the defense. See Ex parte Selby, 442 S.W.2d 706 (Tex.Cr.App. 1969) and Ex parte Thomas, 429 S.W.2d 151 (Tex.Cr.App.1969). While the petitioner's motion arguably may have complied with the former requirement, by noting that the witnesses requested were material alibi witnesses, it did not comply with the latter.[7] Therefore, assuming that this requirement reasonably serves a legitimate interest of the state, it cannot be said that the petitioner presented his request to the trial court in the proper manner. But in the context of this case, that fact should not foreclose federal review. The action taken by the trial court was not based on a procedural deficiency of the petitioner's motion; it was based instead on the merits. Hence, to ignore the merits now because of a procedural deficiency would give constitutional credence to "an arid ritual of meaningless form", Staub v. City of Baxley, 355 U.S. 313, 320, 78 S.Ct. 277, 281, 2 L.Ed.2d 302 (1957). And that, of course, is not required. See Monger v. Florida, 405 U.S. 958, 92 S.Ct. 1163, 31 L.Ed.2d 236

(1972) (Douglas, J., dissenting); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1964); and N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Rather, because the merits of the petitioner's motion were the basis for the action taken by the trial court, to give the Constitution substance in this case, the merits of the action taken by the trial court must be subject to review.

■ Those merits require very little discussion. The petitioner's request to secure the attendance of alibi witnesses was, simply stated, a request to present a defense. Mr. Chief Justice Warren noted in Washington v. Texas, *supra*, 388 U.S. at 19, 87 S.Ct. at 1923, that:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*See also* Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). And his statement is equally applicable here. The petitioner's defense rested completely upon the material alibi witnesses he requested.[8] As the facts developed, they were his only defense. Therefore, when he was denied the right to secure their attendance, without a hearing or a response from the state, he was denied the right to present his side of the story; i.

---

7. Compare United States v. Bottom, 469 F. 2d 95 (9th Cir. 1972); Welsh v. United States, 404 F.2d 414 (5th Cir. 1968); Myers v. Frye, 401 F.2d 18 (7th Cir. 1968); and Zerschausky v. Beto, 396 F.2d 356 (5th Cir. 1968).

8. The fact that the witnesses requested by the petitioner were incarcerated is not germane. Prisoners, although they may pose

difficult problems of security and logistics, *see* United States v. Smith, 436 F.2d 787 (5th Cir. 1971) and United States v. Panczko, 429 F.2d 683 (7th Cir. 1970), are not incapable of telling the truth. Nor are they incapable of being believed. If the testimony of the witnesses requested had been believed by the jury in this case, the petitioner would have been found not guilty.

e., he was denied the right to be heard. A conviction so obtained is repugnant to the concept of justice at the core of the Sixth Amendment. Accordingly, the Court must conclude that the petitioner's first ground of error is meritorious and that his conviction based on that error must not be allowed to stand.

■ The petitioner's second ground of error raised a different question entirely. On the morning his trial began, out of the presence of the jury, the petitioner was brought into the courtroom in shackles. When his counsel objected, an assistant district attorney offered to introduce into evidence a copy of a prior conviction against the petitioner for attempted escape and copies of several letters, linked to him, which indicated that he might attempt another escape. These copies were never introduced into the records of the case. Nor were they ever produced.[9] But the statement by the Assistant District Attorney that they existed was apparently relied upon by the trial judge, along with the petitioner's record, who overruled the objection and ordered that the shackles remain.

The Texas Court of Criminal Appeals affirmed the trial court's holding. The appellate court found that "There is no showing that any juror saw or knew that [the petitioner] had on leg irons or was prejudiced in any way." And that "Absent such a showing, no reversible error is presented." Hardin v. State, *supra*, at 64 of 471 S.W.2d. *But see* Gray v. State, 99 Tex.Cr.R. 305, 268 S. W. 941 (1925) and Ex parte Slaton, 484 S.W.2d 102 (Tex.Cr.App.1972).

■ ■ The question of whether a defendant should be physically restrained is, in general, a matter within the discretion of the trial judge. He alone is in a position to feel the chill generated by a disruptive defendant or a defendant intent on flight. Indeed, "[h]ardly any other matter can better be relegated to the discretion of the trial court than that of safeguarding the court, counsel, jury, and spectators, and assuring the continued presence and attendance of the accused at the trial." McDonald v. United States, 89 F.2d 128, 136 (8th Cir. 1937), cert. denied, 301 U. S. 697, 57 S.Ct. 925, 81 L.Ed. 1352 (1937). It is admittedly difficult, therefore, to determine after the fact from the cold state of the record, whether the physical restraint of a defendant was proper. Nevertheless, because of the impact of such restraints, the action taken by a trial judge must be subject to review to determine if he has abused his discretion.

■ That review must begin with the basic premise that "Freedom from shackling and manacling of a defendant during the trial of a criminal case has long been recognized as an important component of a fair and impartial trial." Odell v. Hudspeth, 189 F.2d 300, 302 (10th Cir. 1951). Probably nothing else is so at odds with the cloak of innocence worn by each defendant, with the sanctity of the courtroom, and with the basic "respect for the individual which is the lifeblood of the law." Illinois v. Allen, *supra* (Brennan, J. concurring). Yet the right to be free from physical restraint is not absolute. "The judge presiding at the trial, the jurors, courtroom personnel and spectators are entitled to security in the performance of their functions . . ." United States v. Samuel, *supra* at 615 of 431 F. 2d. And "[I]t is undoubted that a trial judge has discretion to order that a defendant be handcuffed during trial to prevent his escape, to prevent him from injuring bystanders and officers of the court, or to maintain a quiet and peaceable trial." Hernandez v. Beto, 443 F.2d

9. It is unfortunate that a hearing was not held at trial to determine whether these letters existed and indicated that the petitioner might attempt to escape. However, such a hearing, although desirable, *see* Loux v. United States, 389 F.2d 911, 919 (9th Cir. 1968) is apparently not required. *See* United States v. Samuel, 431 F.2d 610, 615 (4th Cir. 1970).

634, 636 (5th Cir. 1971). However, handcuffs, shackles, and other forms of physical restraints are only measures of "last resort." Illinois v. Allen, *supra,* at 344 of 397 U.S., 90 S.Ct. 1057. *See also* United States v. Esquer, 459 F.2d 431 (7th Cir. 1972); Flaum & Thompson, The Case of the Disruptive Defendant: Illinois v. Allen, 61 Jour. of Crim. Law 327 (1970); and ABA Minimum Standards of Criminal Justice, "The Function of the Trial Judge" § 6.8 (App. Draft 1972). "In other words such procedure should not be permitted except to prevent the escape of the accused, to prevent him from injuring others and to maintain a quiet and peaceable trial." Way v. United States, 285 F.2d 253, 254 (10th Cir. 1960). It must be determined therefore, whether in this case the trial judge could reasonably have concluded that the use of shackles or some form of restraint was needed to prevent the petitioner's escape.

 A portrait of the setting of the trial is required. The petitioner, a young man who weighs approximately 125 pounds, was escorted during the trial from the jail to the courtroom out of the presence of the jury each morning. He was placed between his counsel, next to two prosecuting attorneys, by two or three bailiffs who sat in the courtroom during the day. As the trial progressed, the petitioner remained seated quietly between his counsel and was allowed to stand or walk from the courtroom only during recesses out of the presence of the jury. His counsel and the prosecution made every attempt to hide his shackles, yet at least two of the jurors who attended the trial saw that the petitioner was shackled.[10]

On this bare state of the record, this Court would be hesitant to reverse. See Stahl v. Henderson, 472 F.2d 556 (5th Cir. 1973). The petitioner, because of his past conduct and the statements of the assistant district attorney, obviously posed a threat of escape. And because of this threat, while it cannot be said that the use of shackles was clearly required, it cannot be said that their use was an abuse of discretion. However, more than the petitioner's appearance was affected. The prosecution's case rested heavily upon the identification of one witness who saw the robbery take place. Although she was not aware at the time that a robbery was taking place and although she only saw the right profile of the robber's face, she identified the petitioner at trial. Because of his shackles, however, and the position of the parties in the courtroom, the petitioner could only exhibit the left side of his profile to the witness and thus the basis for her identification was tainted. Moreover, because of his shackles, and the fear that they would be seen, the petitioner was prohibited from taking the stand to rebut the witness' identification.[11] And his counsel were foreclosed from offering to the jury a truthful explanation.

 Because of these facts, the shackles of the petitioner must be viewed in a different light. While there is no doubt that there are cases where physical restraints are required, see e. g. United States v. Bentvena, 319 F.2d 916 (2nd Cir. 1963), where a defendant must forego the significant benefits the petitioner has foregone, i. e. the right to confront the witnesses against him and the right to testify in his own behalf,[12]

10. Only three of the original twelve jurors were produced at the habeas corpus hearing. Of those three, two testified that they were aware of the petitioner's shackles. The mere fact that jurors have seen a defendant's shackles, however, does not necessarily void his conviction. *Cf.* Mallonee v. Lanier, 354 F.2d 940 (5th Cir. 1966).

11. Even if he had been unshackled, because of his prior convictions, as a matter of trial strategy the petitioner may never have taken the stand. However, the fact that he was shackled was a factor which influenced the decision he made to allow one of his counsel to testify, and not to testify in his own behalf.

12. This Court need not decide whether the right to testify is now a right implicit in the concept of due process. *See* Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.

due process requires that a clear need for such restraints be shown.[13] That need is absent here. At least six men were in the courtroom during the trial with the petitioner to quash an attempt to escape. He could not have bolted or slipped away. In addition, to secure the safety of those present, the courtroom could have been searched for weapons or, for a short period of time, the courtroom could have been cleared. There are numerous ways in which the courtroom could have been made temporarily safe, and the rights of the petitioner protected, without the use of shackles.

Hence, it cannot be said that this is that extreme case where the use of shackles was clearly required at every moment of the proceedings. Nor can it be said that it reasonably could have been so concluded. The petitioner, not only was deprived of the right to secure the attendance of witnesses in his behalf, he was deprived of the right to confront the witnesses against him and the right to take the stand to offer an explanation; all for no apparent reason. To uphold such a result would fly in the face of fairness and would give carte blanche to the shackling of any defendant at a critical stage of his case, and that this Court declines to do. Without diminishing the importance of courtroom security, it must be concluded that the shackling of the petitioner throughout the trial, in light of the circumstances which occurred, deprived the petitioner of a fair trial and thus was fundamental error. Accordingly, the petitioner's conviction must be set aside.

This, of course, does not mean that the petitioner immediately will be set free. First, this decision in no way affects the other sentences the petitioner

is serving. And second, the state, if it so desires, may re-try the petitioner for the crime with which he was charged within three months from this date.

Accordingly, it is so ordered.

Ed.2d 358 (1972); and Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). It is a right clearly conferred by the state. See art. 38.08 Tex.Code of Crim.Proc. The question here is simply whether that right may be lost for no apparent reason.

13. This does not imply that the state has the burden of proof in a habeas corpus case. That burden is on the petitioner. *See* Odell v. Hudspeth, *supra*. However, once the petitioner has shown that he has suffered significant harm for no apparent reason, the state must come forward with some explanation.