332 So.2d 443 (1976)
STATE of Louisiana
v.
Raymond LOCKETT.
No. 57404.
Supreme Court of Louisiana.
May 17, 1976.
*444 Frank G. De Salvo, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
In a bill of information filed by the District Attorney of Orleans Parish on July 30, 1974, Raymond Lockett was charged with distribution of heroin on March 29, 1974. He was tried on October 24, 1974, found guilty as charged and sentenced to serve the remainder of his natural life in the custody of the Department of Corrections.

Assignments 1, 2 and 4
Shortly after 5 p.m. on the afternoon of March 29, 1974, Detective Gayle Roberson, at that time a federal agent, and Detective James Lewis of the New Orleans Police Department Narcotics Division, acting as undercover agents, picked up two confidential informants, Calvin Clark and Emanuel Stewart, in a cab Lewis was driving. They proceeded to the intersection of South Rampart and Erato Streets in New Orleans where they met Raymond Lockett; Stewart got out of the car, had a conversation with Lockett, returned to the car and then Detectives Roberson and Stewart went with Lockett to the side of a nearby building where Roberson handed Lockett sixty dollars. Lockett, in turn, handed Stewart five bags of heroin, which Stewart promptly handed to Roberson.
On the day of the trial a motion for continuance was filed on behalf of Lockett. He alleged that he had only recently learned of the existence of Calvin Clark and Emanuel Stewart, two material witnesses. Both were physically present with Detective Roberson at the time of the alleged offense, and "neither of them observed any criminal activity on the part of the accused."
At the hearing on the motion, defense counsel testified that this prosecution was one of a series labeled "Checkmate". In some of these trials the names of Clark and Stewart were mentioned as witnesses. These witnesses had resided in the five to ten hundred blocks of South Rampart Street during their entire lives, he said. When questioned by the State's attorney, defense counsel admitted he had not contacted the District Attorney's office about the case until the day before.
*445 It was also shown that an in-Chambers Conference was held that morning with the judge, defense counsel and Assistant District Attorney in an effort to ascertain the whereabouts of the witnesses. At that time the Assistant District Attorney stated that these two witnesses would suffer contempt of court rather than respond to subpoenas.
The trial judge denied the continuance and then issued instanter subpoenas for Clark and Stewart at the addresses indicated by defense counselthe five to ten hundred blocks of South Rampart Street.
Defense counsel then requested that the subpoenas be served on the federal authorities (Dangerous Drug Enforcement Agency) who, he said, had acknowledged knowing Clark and Stewart. The request was denied and defense counsel objected.
The record of the trial reveals that when the State finished its case, defendant moved for a directed verdict, which was denied. Before the defendant was required to proceed with his defense, the trial judge called a recess until a return could be made on the subpoenas he had issued for the attendance of the witnesses Clark and Stewart.
After the recess, when court was again in session, defense counsel called Captain Marullo of the Criminal Sheriff's Office of Orleans Parish. He testified he had two attachments, one was for Clark, whose address was 1931 Orleans Ave. This was a building where the lower floor was an empty business place and the upper floor consisted of vacant living apartments. He knocked and received no response there.
The second attachment was for Stewart, whose address was 732 Burgundy Street. This was an apartment building where the officer received no response. A locked iron gate prevented further efforts to serve the attachments. (These addresses were furnished to defense counsel by the State after the subpoenas were issued and he, in turn, gave them to the Criminal Sheriff.)
After Captain Marullo's testimony, defense counsel asked the judge to hold the case open. This request was refused.
An application for continuance must allege "specifically the grounds upon which it is based." La.Code Crim.Pro. art. 707. It shall not be granted after the trial or hearing has commenced La.Code Crim.Pro. art. 708. A motion for continuance based upon the absence of a witness must state:
"(1) Facts to which the absent witness is expected to testify showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness." La.Code Crim.Pro. art. 709.
Judged by these standards, there is no abuse of the discretion vested in the trial judge in such cases. The motion for continuance made only the conclusory allegation that "neither of them observed any criminal activity on the part of the accused." This is not stating "specifically the grounds." Id. art. 707. Although the trial had not commenced in the technical sense, the motion for continuance was not filed until shortly prior to the beginning of the trial on the day the case was assigned for trial. Id. art. 708. And the facts the witnesses would testify to were not set forth; nor were facts set forth in the motion showing a probability that the witnesses would be available if the trial were deferred. The record does not demonstrate due diligence in an effort to procure attendance of the witnesses. It will be recalled that defense counsel testified he only sought information concerning the whereabouts of the witnesses from the District *446 Attorney the day before trial. Lockett was arrested on July 16, 1974 and this trial was on October 24, 1974, a period during which ample time was available for a thorough investigation. The trial judge did everything he was capable of doing, short of granting a continuance. He issued the subpoenas, and he compelled Detective Roberson to disclose the names of her informants in order to provide the defense with information relating to these witnesses. There was no abuse of discretion in his ruling.
The Articles of the Code referred to above are not platitudes. Unless the standards set out there are adhered to, the trial of cases will be unduly and unexpectedly delayed, and the handling of court dockets will be hampered. When the Code's standards are complied with, however, the defendant is protected and there is little likelihood of prejudice to his case. Last minute requests for witnesses, when due diligence has not been shown to obtain their attendance, is not sanctioned by the Code.
These assignments are without merit.

Assignment 3
This assignment relates to the reception in evidence of State's exhibits S-1, S-2, and S-3, a brown envelope containing a lock-seal envelope enclosing the packages of heroin, and a registered post office receipt.
Robert Arnold was called as a State witness. He was a chemist employed by the Federal Drug Enforcement Administration with offices in Miami. His duties were to analyze evidence to determine whether it was a narcotic or dangerous drug.
He testified that he received the evidence in the Lockett case from Agent Charles Park on April 3, 1974 and performed the analysis the next day. When he received the lock-seal envelope containing the evidence it was intactthe envelope had not been tampered with. He labeled and initialed the envelope and handed it to the custodian who placed it in the vault. He was qualified as an expert and described the test he performed on the brown powder contained in the envelope marked S-2. He found that the substance was heroin. When he was called to testify he withdrew the envelope from the vault and brought it to trial. He identified exhibits S-1 and S-2.
Agent Charles Park with the Drug Enforcement Administration in New Orleans testified that he received the aluminum packets from Gayle Roberson on March 29, 1974 and placed them in a plastic envelope marked S-2, sealed and initialed it and wrote the case number and date thereon. On that envelope the name of James Lockett was shown as the defendant. Then he inserted the plastic envelope in an envelope marked S-1. He then mailed the brown envelope on that same day to the Miami Regional Laboratories by registered mail, return receipt requested. S-3 is the post office receipt showing delivery of the envelope to Miami. He identified all exhibits.
Detective Roberson testified that she surrendered the tin foil packets containing the heroin to Agent Park shortly after they were handed to her by Stewart. She met Park at a prearranged rendezvous in a motel within the city.
When the State offered exhibits S-1, S-2 and S-3 into evidence, defense counsel objected that these exhibits had not been identified with defendant. The argument is that the name of James Lockett, not Raymond Lockett, appeared on the envelope as the defendant in the case.
Despite this irregularity, the evidence otherwise carefully details the chain of custody, convincingly establishing that the heroin was the same which Raymond Lockett handed to Stewart on March 9, 1974 in the presence of Detective Roberson.
The rule of law we have recognized, which applies here, is set forth in State v. *447 Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972).
"To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence.
The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. State v. Coleman, 254 La. 264, 223 So.2d 402; State v. Martin, 250 La. 705, 198 So.2d 897; State v. Bertrand, 247 La. 232, 170 So.2d 386.
The lack of positive identification goes to the weight of the evidence, rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury. State v. Wright, 254 La. 521, 225 So.2d 201; State v. Whitfield, 253 La. 679, 219 So.2d 493; State v. Progue, 243 La. 337, 144 So.2d 352; 2 Wharton's Criminal Evidence (12th ed.), § 673, p. 617."
The ruling of the trial judge denying the defense objection to the exhibits was correct.

Assignment 5[1]
Quoted hereafter are those portions of the Assistant District Attorney's closing argument upon which the defense relies to support this assignment of error. The contention is that these statements are violative of the mandate of Article 774 of the Code of Criminal Procedure that "[t]he argument shall be confined to evidence admitted. . . ."
The first statement made by the Assistant District Attorney in argument which defense counsel finds objectionable is: "Detective Roberson, Detective Lewis and these two informants are risking their lives because they have society's interest at heart." While this statement may not be categorically supported by empirical evidence in the record, the inference drawn from this hazardous service of the officers is not implausible. Inferences from the facts in the record (the service of these officers) are permitted to be drawn by counsel in argument. While counsel should be careful to draw reasonable inferences founded on legitimately established facts, wrong inferences are not necessarily fatal, for it seems to be generally conceded that mistaken inferences drawn from the evidence by counsel in argument do not constitute misconduct warranting a reversal where they are not such as would necessarily or probably mislead the jury to the prejudice of defendant. Since the trial judge found this comment to be within the latitude allowed in argument, it must be concluded that he did not consider the inference unreasonable.
The next objection relates to the location of the two witnesses defendant sought to subpoena prior to trial. Their unavailability was relied upon as a ground for continuance. Because the motion for continuance was filed just prior to trial, and there was a lack of diligence exercised to locate the witnesses timely, the Assistant District Attorney's statement that he "asked around for these people" (the witnesses) had no bearing on the merits of the case, only on *448 the motion for continuance which had been denied, and therefore that issue was then moot. The same is true of this statement in argument that "these same two people (the witnesses) are wanted in Section F of this Court." Besides, the trial judge instructed the jury to disregard this last statement.
This statement is said to be based upon evidence outside the record: "Mr. Johnson said the chemist came from the New Orleans area. There is only one Federal Narcotics office in the New Orleans area. It could have only come from one office. The FBI doesn't work narcotics." From the wording of the statement it is evident that it is made in rebuttal to statements of Mr. Johnson, defense counsel. Since we have not been furnished with the argument of defense counsel, and only part of the State's argument, it is not feasible to determine whether the statement is proper rebuttal without the full context of both arguments.
"The U.S. Marshal's Office doesn't work narcotics. The U.S. Attorney's Office doesn't work narcotics." This statement by the Assistant District Attorney is also obviously part of the State's rebuttal argument, and it falls in the same category as the foregoing statements.
Although the fact that the FBI, the U.S. Marshal and the U.S. Attorney do not "work narcotics" may be known officially, it is not necessarily a matter of common knowledge. Nevertheless, when the comment is provoked by opposing counsel, the remark will not serve to upset a conviction. State v. Cascio, 219 La. 819, 54 So.2d 95 (1951); State v. Poe, 214 La. 606, 38 So.2d 359 (1949); State v. Borde, 209 La. 905, 25 So.2d 736 (1946). The comment is also not unreasonable because it is based upon a matter which may arguably come within judicial cognizance as part of the "laws of the . . . United States." La.R.S. 15:422.
In any event, there is grave doubt that this argument influenced the jury to the prejudice of the defendant, considering the overwhelming proof of guilt. Before a verdict approved by a judge is set aside on ground of improper argument, this Court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. La.Code Crim.Pro. art. 921; State v. Dennis, 250 La. 125, 194 So.2d 720 (1967).
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
TATE, J., dissents and assigns reasons.
CALOGERO, J., dissents for reasons assigned by TATE, J.
TATE, Justice (dissenting).
I respectfully dissent.
The defendant was denied his right to obtain compulsory process to secure the attendance of two witnesses whose location was known to the state, but not to him. These witnesses, confidential informants used by the state, had participated in the incident chargedan alleged sale of heroin by the defendant to two undercover police officers.
Aside from the police officers, these two informants were the only other witnesses to the alleged sale. The defendant, alleging that he had recently learned of their identity, attempted to subpoena them to prove that no criminal activity on his part had occurred when the four state agents had sought him out.
The state refused to produce the witnesses, alleging that they would suffer contempt of court rather than respond to subpoenas. The trial court refused to order that subpoenas to produce these witnesses be served upon the federal agency for which they worked.
It violates fundamental due process rights of fairness, and a defendant's right to confront the witness against him and to *449 secure witnesses he alleges are needed for his defense, for the state willfully to conceal the whereabouts of witnesses and to refuse to aid the court in securing their attendance. It was error for the trial court not to issue subpoenas upon the law enforcement agency for which they worked to secure the attendance of these witnesses.
We note, too, that the state had no difficulty in securing the presence of these same two witnesses in State v. Smith, 329 So.2d 725 (decided March 29, 1976), to testify for the state, as also in quite a few other trials in Orleans Parish (see Tr. 4-5). The state can produce these witnesses when it needs them; it should not be able to hide them when an accused (claims he) needs them.
Unlike the theory and practice in totalitarian countries, in America the state has an obligation, in prosecuting, not to deny an accused the right to produce witnesses whom he alleges will aid his defense. The state's interests is not to convict, but to try fairlyand to leave it to the jury to convict, after full hearing of the accused's defense. Fundamental due process and confrontation rights were here denied.
NOTES
[1] Although referred to in brief as Assignment of Error No. 5 by both the defense and the State, the matter appears as Assignment of Error Nos. 6, 8 and 9 in the record. Throughout this opinion the designation used by counsel in brief is used when referring to assignments of error.