Raymond **LOCKETT**,
Petitioner-Appellant,

v.

Frank **BLACKBURN**, Warden, Louisiana State Penitentiary,
Respondent-Appellee.

No. 77–1730.

United States Court of Appeals,
Fifth Circuit.

April 12, 1978.

As Amended on Denial of Rehearing and Rehearing En Banc June 15, 1978.

310

Raymond Lockett, pro se.

J. Donice Alverson, Atty. (Court-Appointed) New Orleans, La., for petitioner-appellant.

Harry F. Connick, Dist. Atty., Louise S. Korns, William L. Brockman, Asst. Dist.

Attys., New Orleans, La., for respondent-appellee.

Before WISDOM, GODBOLD, and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

This habeas appeal involves the effect of a state prosecutor's concealing two witnesses whom the petitioner had subpoenaed. We remand.

Raymond Lockett, convicted in a Louisiana criminal court of sale of heroin and sentenced to life imprisonment, brings this petition for habeas corpus. Lockett alleges that the State violated his sixth and fourteenth amendment rights to compulsory process for obtaining witnesses and to due process of law. The State's evidence at trial tended to show that Lockett sold heroin to an undercover agent in the presence of two confidential informants, Emmanual Stewart and Calvin Clark. Lockett alleges, and the State concedes, that the State encouraged and helped Stewart and Clark to leave Louisiana just before his trial. On the morning of trial, Lockett's lawyer attempted to locate and subpoena Stewart and Clark to serve as witnesses at trial. He was unable to do so, because the State had sent the witnesses to Florida.

Unaware of the State's tactics, Lockett's lawyer moved for a continuance to search for the missing eyewitnesses. The trial court denied this motion because it found that Lockett had failed to comply with procedural requirements of Louisiana law. The Louisiana Supreme Court affirmed the trial court's decision to deny the continuance. It also rejected Lockett's federal compulsory process and due process claims. *State v. Lockett,* 332 So.2d 443 (La.1976) (*see* dissenting opinion of Tate, J., *id.* at 448–49).

■■■ Lockett then brought this habeas petition. The district court found that Lockett was attempting to convert a procedural issue, the denial of the requested continuance, into a constitutional issue; it dismissed his petition. We find that the State's deliberate removal of the eyewitnesses constitutes a prima facie violation of Lockett's right to due process of law. We remand this case to the district court for an evidentiary hearing to determine whether the prima facie violation requires that Lockett's habeas petition be granted.[1]

## I.

According to the State, on the afternoon of March 29, 1974, petitioner Lockett sold five bags of heroin to federal undercover agent Gayle Roberson. Roberson and two confidential informants, Emmanual Stewart and Calvin Clark, were passengers in a

---

1. In his original pro se brief, Lockett also contends that the prosecution violated his right to due process by vouching for Stewart and Clark. The prosecutor stated that "these two informants are risking their lives because they have society's interest at heart". In fact, the Government was paying Stewart and Clark for the work they were doing. They were described as heroin addicts and something less than model citizens in *United States v. Joseph,* 5 Cir. 1976, 533 F.2d 282, 287 (Tuttle, J., dissenting).

Lockett's appointed counsel does not contend that this comment is constitutional error in itself. She urges, however, that we view the remark as part of a larger due process violation—the State's use of these witnesses as it wished, seemingly without regard for the truth or the rights of the petitioner. We find the prosecutor's remark improper. *See United States v. Sanfilippo,* 5 Cir. 1977, 564 F.2d 176, 179. Here, the State hired unsavory characters, failed to produce them upon request because it had sent them away, and then praised them to the jury. If, on remand, the district court should conclude that Clark and Stewart

would have supported the State's case at trial, it should deny the petition. The prosecutor's remark, in the presence of a strong case for the State, is harmless beyond a reasonable doubt. And if Clark and Stewart support the State's case, Lockett can make out no other, "larger" due process claim. The State contends that it removed Clark and Stewart from the jurisdiction to protect them from harm. This appropriate concern would not justify all the State's conduct in this case. *See Roviaro v. United States,* 1957, 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 n. 8; *Velarde-Villarreal v. United States,* 9 Cir. 1965, 354 F.2d 9, 15 (Ely, J., concurring). The State had used Clark and Stewart in other Operation Checkmate trials; they had already been identified, therefore, as informants. Here the State removed them at a time when it knew they were under subpoena (in a case other than Lockett's). It failed to produce the two and to support Lockett's motion to continue the case until they appeared. But if the State did not deny Lockett exculpatory evidence, the State's actions even considered together, did not deny him a fair trial.

taxicab driven by undercover Detective James Lewis of the New Orleans Police. All four were part of a federal-state crackdown against narcotics in the New Orleans area that was called "Operation Checkmate", and that resulted in over sixty arrests. The cab stopped at the corner of South Rampart and Erato Streets in New Orleans, where Stewart got out and met with Lockett. Then Stewart returned to the cab for Roberson; the two huddled with Lockett at the side of a building. Roberson handed Lockett sixty dollars; Lockett handed Stewart five bags of heroin; and Stewart gave the heroin to Roberson.

The day before trial, Lockett informed his lawyer that Stewart and Clark would help his case. Lockett contends that he learned of the alleged involvement of the pair through the news media just before he asked his lawyer to procure their attendance. At trial, Lockett's lawyer made several motions. First, he asked that the trial be continued until Stewart and Clark could be produced. This motion was denied. Second, Lockett's attorney sought instanter subpoenas for the two witnesses. The State furnished addresses for these subpoenas, but they were returned unserved. Third, the defense asked that subpoenas be served on the federal Drug Enforcement Agency employees who had employed Stewart and Clark. The trial judge denied this request.

At the time the state trial judge denied Lockett's motions, he was unaware of the State's role in bringing about the absence of Clark and Stewart from the jurisdiction. A New Orleans Police Lieutenant has since testified about the State's activities in Lockett's case at the trial of another defendant who was among the sixty arrested as part of Operation Checkmate. That defendant was Norman Clark, no relation to the informant Calvin Clark. At the Norman Clark trial, the police lieutenant testified that the United States Attorney's Of-

fice bought airline tickets for Stewart and Calvin Clark for a flight to Florida on October 18, 1974, six days before Lockett's trial.[2] The New Orleans police officer testified that he gave the two witnesses $130 in cash as spending money for their Florida trip even though he knew they were under subpoena at the time. The officer had suggested the idea of sending the witnesses out of town to the Orleans Parish District Attorney's Office, and that office approved the plan, in which the United States Attorney's Office also participated.

The state trial court's rulings were affirmed by the Louisiana Supreme Court. That court affirmed the denial of Lockett's motion to continue the trial because it found that Lockett had failed to comply with Louisiana law in two respects. First, it decided that Lockett's allegation that "neither [Stewart nor Clark] observed any criminal activity on the part of the accused" was not specific enough. The allegation did not state "specifically the grounds" for continuance as required by La.Code Crim.Pro. art. 707. Moreover, the motion did not allege "[f]acts to which the absent witness [was] expected to testify" as required by art. 709(1). Second, the Court found that by informing his attorney of his request only the day before trial, Lockett had failed to exercise the "due diligence" required by art. 709(3). 332 So.2d at 445–46.

In ruling on Lockett's federal constitutional claims, the Louisiana Supreme Court may not have known the details of the State's scheme that came out at the Norman Clark trial. A majority of the Louisiana Supreme Court found no violation of due process or compulsory process in this concealment. The court was aware, however, that "[t]he State refused to produce the witnesses" and that the State "willfully" "conceal[ed] the whereabouts" of the two. 332 So.2d 448, 449 (Tate, J., dissenting). Justices Tate and Calogero, however, would have found that the State's tactics

**2.** *See Berger v. United States,* 1935, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the

law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

"violate[d] fundamental due process rights of fairness, and a defendant's right . . . to secure witnesses he alleges are needed for his defense". *Id.*

When Lockett petitioned the United States District Court for the Eastern District of Louisiana, that court held that he was entitled to no relief, because his habeas petition was foreclosed by a valid state procedural default. The district court found that Lockett was attempting to convert a procedural issue—the denial of a continuance—into a constitutional question.

## II.

■ At the outset, we find that the district court erred in holding Lockett's habeas petition barred by a procedural default. We accept, as we must, the Louisiana Supreme Court's holding that Lockett's motion to continue the trial was properly denied under Louisiana law. But Lockett's habeas petition has other aspects. The Louisiana courts did not find that Lockett's allegations of denial of compulsory process and due process were barred by any procedural default. Their procedural rulings reached only his motion to continue the case. Moreover, the parties now agree that the State willfully concealed Stewart and Calvin Clark from the trial court. Neither Lockett nor the state trial judge knew that the State had deliberately made key witnesses unavailable for defendant's trial. The State's concealment of the witnesses, not the denial of the continuance, compels an evidentiary hearing in district court.[3]

■ We are not bound by the decision of a state court on federal constitutional questions in habeas proceedings.[4] 28 U.S.C. § 2254(d). Our study of the record convinces us that Lockett has established a prima facie due process violation, and that the contrary decision of the Louisiana Supreme Court cannot stand. We reach this conclusion notwithstanding our respect for that court.

■ The deliberate concealment of a named[5] eyewitness whose testimony would admittedly be material constitutes a prima facie deprivation of due process. Although we have found no case squarely on point, similar cases compel this conclusion.

■ Deliberate hiding of favorable evidence requires habeas relief. In *Boone v. Paderick,* 4 Cir. 1976, 541 F.2d 447, the Court of Appeals for the Fourth Circuit granted habeas relief after a prosecutor knowingly elicited false testimony in the petitioner's trial. Similar misconduct elicited a similar result in *Powell v. Wiman,* 5 Cir. 1961, 287 F.2d 275, 279. A defendant who pressed a like withholding of favorable evidence claim did not obtain habeas relief, however, when he "failed to show that the prosecution knew any more than he did". *Clarke v. Burke,* 7 Cir. 1971, 440 F.2d 853, 855, *cert. denied* 1972, 404 U.S. 1039, 92 S.Ct. 718, 30 L.Ed.2d 731.

*Armstrong v. Collier,* 5 Cir. 1976, 536 F.2d 72, is relevant. In *Armstrong,* the prosecution lost files that possibly pertained to the habeas petitioner's case. This Court denied relief because the petitioner expressly disclaimed any allegation that the State misplaced the files intentionally or in bad faith. *Armstrong* relied on *United States v. Augenblick,* 1969, 393 U.S. 348, 89 S.Ct. 528, 21

---

**3.** We need not reach the question whether Lockett could state a claim without this concealment. *See Hardin v. Estelle,* W.D.Tex. 1973, 365 F.Supp. 39, 42 n. 5, *aff'd,* 5 Cir. 1973, 484 F.2d 944. The trial court did not and could not rule that Lockett defaulted as to the concealment claims, for it was unaware of the concealment at the time. Lockett's default reached only the continuance motion: his tardiness and lack of specificity in seeking witnesses cannot bar our consideration of the State's then-unknown concealment of those witnesses.

**4.** Although the trial court did not consider Lockett's due process claim, the Louisiana Supreme Court did. *See* 332 So.2d at 448–49 (Tate, J., dissenting). It found all Lockett's claims without merit. Lockett has thus ex-

hausted all his state remedies, as 28 U.S.C. § 2254(b) requires.

**5.** When a confidential informant's identity is unknown to a defendant, the informant's identity need not always be revealed. *See Roviaro v. United States,* 1957, 353 U.S. 53, 60, 77 S.Ct. 623, 1 L.Ed.2d 639; *United States v. Morris,* 5 Cir. 1978, 568 F.2d 396 [1978]. In this case, Lockett alleges, and the State does not deny, that the names of Clark and Stewart were mentioned in the news media in New Orleans just prior to his trial. In these circumstances, there was no conceivable good reason to withhold the informants from trial. *See United States v. Roviaro,* 353 U.S. [53] at 60–61 & n. 8, 77 S.Ct. 623.

L.Ed.2d 537. The Government in *Augenblick* had made tape recordings of important interrogations and then had lost the tapes. The Supreme Court found that "the Government bore the burden of producing [the tapes] or explaining why it could not do so". *Id.* at 355–56, 89 S.Ct. at 533. Because the Government made "an earnest effort" to find the tapes, the Court found no violation of due process. *Id.* at 355, 89 S.Ct. 528. In the instant case, however, the State's "earnest effort" was not to produce the material witnesses but to hide them.

Since we remand this case because of the prima facie violation of Lockett's right to due process, we need not reach the question whether, in these circumstances, the State denied him the right to compulsory process. That is to say, we need not decide whether Lockett's bare allegation that neither Clark nor Stewart "observed any criminal activity on the part of the accused" was a sufficient showing to require the State to produce them.[6] "The right to compulsory process is not absolute, and a state may require that a defendant requesting such process at state expense establish some colorable need for the person to be summoned, lest the right be abused by those who would make frivolous requests." *Hoskins v. Wainwright*, 5 Cir. 1971, 440 F.2d 69, 71.

Some federal cases require defendants requesting subpoenas to be very specific. In *United States v. Joyner*, 5 Cir. 1974, 494 F.2d 501, 507, *cert. denied*, 419 U.S. 995, 95 S.Ct. 308, 42 L.Ed.2d 268, for example, a request to subpoena a reputation witness for impeachment purposes was held properly denied because the defendant alleged neither "the origin of this reputation [n]or the locale in which is existed". *See also Hoskins v. Wainwright*, 5 Cir. 1971, 440 F.2d 69, 71; *United States v. Jasper*, 10 Cir. 1975, 523 F.2d 395, 399, *cert. denied* 1976,

423 U.S. 1075, 96 S.Ct. 859, 47 L.Ed.2d 85. On the other hand, an allegation that a requested witness was an "alibi witness", held insufficiently specific by the Texas Court of Criminal Appeals, was found sufficient in a habeas proceeding. *Hardin v. Estelle*, W.D.Tex.1973, 365 F.Supp. 39, 43–44, *aff'd*, 5 Cir. 1973, 484 F.2d 944. Had Stewart and Clark been strangers to the State, we would have to face this sixth amendment issue and decide whether the State violated Lockett's right in not finding the witnesses after Lockett's allegations. Using a due process rather than a compulsory process analysis, we have no difficulty in deciding that the State wronged Lockett by making the two missing witnesses unavailable to testify at the petitioner's trial.

 Lockett's showing of a prima facie violation of due process would ripen into constitutional error upon a showing that the missing witnesses' testimony, when evaluated in the context of the entire record, would create a reasonable doubt of guilt that did not otherwise exist. *U. S. v. Agurs*, 1976, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342[7]. A habeas petitioner must both allege and demonstrate prejudice to obtain the writ. *Perry v. State of Texas*, 5 Cir. 1972, 456 F.2d 879. We remand this case to the district court for an evidentiary hearing to determine if the unavailability of Clark and Stewart to testify was prejudicial to Lockett. If the court should find that Clark and Stewart would have supported the State's case, it must dismiss Lockett's petition. Otherwise, the district court must issue the writ, unless the State elects to retry Lockett promptly.

Remanded.

---

**6.** The State also urges that, as with his requested continuance, Lockett waived his compulsory process right by failing to exercise due diligence. The State contends that Lockett's delay was an intentional ploy to postpone the trial. Since Lockett was in jail at all relevant times, however, he had no reason to stall the proceedings.

In addition, the State contends that it is inherently incredible that Clark and Stewart would not support its case. Of course, we do not know what Clark and Stewart may now say. But their State-compelled absence at the time of the trial raises the suspicion, at least,

that they will not corroborate the State's version of the events involving Lockett.

**7.** Testimony by the missing witnesses that does not inculpate Lockett would require the district court to hold for Lockett. Such testimony would be material under any standard.

The standard of materiality in this case is the same as that for physical evidence for which a specific request has been made. *See United States v. Agurs*, 1976, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342, 350. It should make no difference that Lockett requested witnesses rather than physical evidence.