Norman CLARK, Petitioner–Appellant,

v.

Frank BLACKBURN, Warden, Louisiana State Penitentiary, Respondent–Appellee.

No. 80–3093
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Dec. 10, 1980.

Maurice T. Hattier, Asst. Fed. Public Defender, New Orleans, La., for petitioner–appellant.

Brian Meissner, John H. Craft, New Orleans, La., for respondent–appellee.

Before GEE, RUBIN and RANDALL, Circuit Judges.

GEE, Circuit Judge:

On December 4, 1974, the petitioner in this habeas corpus proceeding, Norman J. Clark, was tried and convicted by a jury in a Louisiana state court for the distribution of heroin in violation of La.Rev.Stat.Ann. § 40:966 (West 1977). Less than a month earlier, his first trial on the same charge had resulted in a mistrial when the jury was unable to reach a verdict.

The transaction upon which Clark's conviction was based involved five persons: Clark, his sister Carolyn Clark, Special Agent Bernard Harry of the Drug Enforcement Administration, and two informants, Emmanual Stewart and Calvin Clark (no relation to petitioner). Special Agent Harry testified at trial that, while acting in an undercover capacity, he and the two informants went to Carolyn Clark's home to purchase narcotics. Petitioner answered the door and in the course of a subsequent conversation stated that his sister had heroin he had given her. After the terms of a sale were discussed with Carolyn and a price of $104 tentatively agreed upon, she looked at the petitioner, who nodded his head. She then left the room and returned with nine packets of heroin, which she gave to Calvin Clark for the $104.

Neither of the informants testified at trial; a New Orleans police officer testi-

fied at petitioner's first trial that the informants had been sent to Florida with spending money and at government expense through the combined efforts of state and federal officials. The officer further testified that it had been his suggestion to send the informants out of Louisiana despite the fact that he knew a subpoena had been issued to compel the informants to testify at the petitioner's first trial.[1]

Petitioner's conviction was affirmed by the Louisiana Supreme Court, 340 So.2d 1302 (La.1976), after which his requests for

habeas corpus relief were rejected by the state trial court in an unpublished opinion; the Louisiana Supreme Court, 347 So.2d 260 (La.1977); and the federal district court in an unpublished opinion. Petitioner's habeas appeal to this court resulted in an unpublished order remanding the case to the district court for an evidentiary hearing consistent "with the holding and direction of this Court in a companion case, *Lockett v. Blackburn*, 5 Cir. 1978, 571 F.2d 309."

In *Lockett* the same two informants who are involved in this case participated with

---

1. The informants were not subpoenaed to testify at petitioner's second trial; further, at the second trial petitioner made no objections or motions to the trial court concerning the government's actions in making the informants unavailable for trial. This failure to raise the issue in a timely fashion, however, does not preclude review of petitioner's claim on the merits in habeas corpus proceedings in either the Louisiana state courts or in federal court.

While Louisiana does have a contemporaneous objection rule, La.Code Crim.Pro.Ann. art. 841 (West 1966) (amended 1974), the Official Revision Comment to that rule provides that "certain rights are so basic that they can be raised for the first time ... in an application for a writ of habeas corpus (Art. 362)." Petitioner's claim is essentially that, because of the government's conduct, he was convicted without due process of law. Article 362(9) of the La.Code of Crim.Pro. expressly authorizes habeas corpus relief for persons convicted without due process of law. Thus, the state trial court, which addressed the merits of petitioner's habeas claim in an unpublished opinion, properly did so even though the Louisiana Supreme Court previously had declined to reach the merits of that claim when petitioner raised it for the first time on direct appeal from his conviction. 340 So.2d 1302 (La.1976). In affirming the state trial court's denial of habeas relief, the Louisiana Supreme Court did not rely on the contemporaneous objection rule but denied the writ because no showing had been made sufficient to "warrant a finding that the trial judge's ruling was in error." 347 So.2d 260 (La.1977). Thus, as petitioner's habeas claim was denied by the state courts on the merits (and indeed could not, under Louisiana law, have been rejected under the contemporaneous objection rule), the merits of petitioner's habeas claim are properly before this court without regard to whether the cause–and–prejudice test of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), has been satisfied. *See County Court v. Allen*, 442 U.S. 140, 147–54, 99 S.Ct. 2213, 2219–23, 60 L.Ed.2d 777, 786–90 (1979); *Thomas v. Blackburn*, 623 F.2d 383, 386 (5th Cir. 1980); *cf. Ratcliff v.*

*Estelle*, 597 F.2d 474 (5th Cir. 1979) (holding federal habeas relief unavailable where the state trial court applied the procedural default rule, and in the same opinion, also rejected petitioner's claim on the merits, and the state appellate court affirmed without a written order).

Petitioner's failure to subpoena the informants for the second trial raises a second, somewhat more difficult issue. In response to petitioner's application for federal habeas relief on the unavailability–of–the–informants issue, the government originally argued that petitioner decided, as a matter of trial tactics, not to subpoena the informants to testify at the second trial. According to the government, the informants' testimony would have been adverse to petitioner, who thus decided to stress their absence from trial rather than try to secure their presence. While the fact that petitioner's first trial resulted in a hung jury provides a basis for arguing that, with respect to the informants' testimony, petitioner decided to leave well enough alone, we are not convinced that petitioner's failure to subpoena the informants was a matter of trial strategy. Subpoenas issued to the informants for petitioner's first trial, originally scheduled for September 23, 1974, were returned unserved. Petitioner then secured a continuance until November 14, 1974, and new subpoenas were again unsuccessfully issued to the informants. The second trial was held just 20 days after the first trial, a fact that supports petitioner's argument that the informants were not subpoenaed merely because such an effort would have been futile. Further, the government's argument assumes that the informants would have testified adversely to petitioner. This assumption is questionable in light of both Calvin Clark's subsequent testimony, discussed *infra*, and the fact that the informants' state–compelled absence from the reach of the subpoenas at least raises the suspicion that they would not have corroborated the state's version of the case. *See Lockett v. Blackburn*, 571 F.2d 309, 314 n.6 (5th Cir. 1978).

government undercover officers in the purchase of heroin from the defendant. The defendant's efforts to subpoena the informants were unsuccessful because of the previously described conduct of the government in sending them to Florida. This court held that "the deliberate concealment of a named eyewitness whose testimony would admittedly be material constitutes a prima facie deprivation of due process." 571 F.2d at 313; *Freeman v. Georgia,* 599 F.2d 65, 69 (5th Cir. 1979). The case was remanded for an evidentiary hearing to determine whether, under *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), "the missing witnesses' testimony, when evaluated in the context of the entire record, would create a reasonable doubt of guilt that did not otherwise exist." 571 F.2d at 314. Guidance on the *Agurs* materiality question of what kind of testimony would create the requisite reasonable doubt was provided by the statements that "testimony by the missing witnesses that does not inculpate Lockett would require the district court to hold for Lockett. Such testimony would be material under any standard." *Id.* at 314 n.7.

At the evidentiary hearing held in this case, informant Stewart's testimony corroborated that of Special Agent Harry at petitioner's trial. Informant Calvin Clark, however, testified that petitioner was not in the room when the heroin was purchased from Carolyn Clark. Nevertheless, the magistrate recommended that the writ of habeas corpus be denied. This recommendation was based on the magistrate's determination that Stewart was a credible witness, while Calvin Clark was not.

According to the magistrate, Calvin Clark would not have testified at trial as he did at the evidentiary hearing. This conclusion was based on the fact that Calvin Clark recently had been incarcerated in the same prison where the petitioner is serving his life term; thus, the magistrate reasoned that Calvin Clark, fearing retribution for his role in aiding the government in its undercover narcotics investigations, testified untruthfully at the evidentiary hearing. In sum, the magistrate found that Stewart was a credible witness whose testimony would not have helped petitioner; that Calvin Clark was not a credible witness; that his evidentiary hearing testimony was a recent fabrication; that he would have testified similarly to Special Agent Harry if he had been called to testify at petitioner's trial; and, consequently, that the jury's verdict would not have been affected had the informants testified at petitioner's trial.

· Based on these findings of fact, the magistrate recommended that petitioner's application for a writ of habeas corpus be dismissed. The district court adopted the magistrate's findings and recommendation and ordered the petition dismissed. Petitioner then brought this appeal; we remand and direct the district court to issue the writ, unless Louisiana elects to retry petitioner promptly.

■ While the magistrate may have been correct in finding that Calvin Clark is not a credible witness,[2] this determination was not one for him to make, and it certainly is not one for this court to make. Petitioner received a life sentence for his conviction for distributing heroin; eyewitnesses to the transaction upon which his conviction was based were made unavailable to testify at petitioner's jury trial by the government despite its knowledge that the witnesses had been subpoenaed to testify at petitioner's first trial. As we held in *Lockett,* such conduct by the government "constitutes a prima facie deprivation of due process." 571 F.2d at 313.

2. On April 5, 1978, Calvin Clark signed an affidavit in which he "categorically denie[d]" that he would have testified favorably to petitioner at petitioner's trial. Rather, "[i]f he had been called to testify, his testimony would have corroborated the testimony of the other State's witnesses, as it did in every other 'Operation Checkmate' [the 1974 narcotics investigation in New Orleans] case, in which he, in fact, testified." The reliability of this affidavit testimony is questionable because it concededly was provided after Calvin Clark had contacted the New Orleans District Attorney's Office for assistance in having charges connected with a subsequent arrest dropped.

■ Under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), constitutional error in a criminal trial can be held harmless only if the court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711. Our opinion in *Lockett* essentially held that we would be able to declare such a belief in this situation only if the evidentiary hearing testimony of the informants "would have supported the state's case." 571 F.2d at 314. Moreover, our opinion in *Lockett* specifically directed the trial court to hold for the defendant if the testimony of the missing witnesses at the evidentiary hearing did not inculpate the defendant. *Id.* Application of the *Lockett* guidelines to the instant case clearly requires that the writ be granted, as Calvin Clark's testimony at the evidentiary hearing neither supported the state's case nor inculpated the petitioner.[3]

■ No one knows how Calvin Clark would have testified had he been available to testify at petitioner's trial. Further, no one knows whether the jury's verdict would have been affected had Calvin Clark testified at the trial in a manner consistent with the testimony he gave at the evidentiary hearing. Petitioner's constitutional right to due process was flagrantly violated by the government's conduct in making Calvin Clark, a material eyewitness to the transaction upon which petitioner was convicted, unavailable to testify despite its knowledge that petitioner had subpoenaed him. Where, as here, the missing witness comes forth with testimony that exculpates petitioner, the conviction cannot be allowed to stand on the basis of a magistrate's findings that the witness was not credible and that his testimony was a recent fabrication.

REMANDED.

**3.** Our conclusion that the due process violation involved in this case was not harmless beyond a reasonable doubt so as to constitute harmless constitutional error under *Chapman* is strengthened by the fact that petitioner's first trial ended in a hung jury, thus indicating the existence of some degree of doubt as to petitioner's involvement in the transaction for which he was convicted. Further, the Respon-sive Verdicts form given to the jury in petitioner's second trial indicates that two of the twelve jurors voted to find the petitioner not guilty. Under Louisiana law, if one of the other ten jurors had voted not guilty, a guilty verdict could not have been rendered. La.Const. art. 1, § 17; La.Rev.Stat.Ann. §§ 40:964, Schedule I, subd. B. (amended 1977), 40:966 (amended 1979) (West 1977).